Gary Dean OWENS and Judy Christine Owens *v.*
STATE of Arkansas

CR 95-1272 926 S.W.2d 650

Supreme Court of Arkansas
Opinion delivered June 24, 1996

*Rush , Rush & Cook,* by: *Craig L. Cook,* for appellant Gary Dean Owens.

*William M. Pearson,* for appellant Judy Christine Owens.

*Winston Bryant,* Att'y Gen., by: *Vada Berger,* Asst. Att'y Gen., for appellee.

BRADLEY D. JESSON, Chief Justice. The appellants are husband and wife. They were initially convicted in November of 1994 of manufacture of methamphetamine, for which they each received a sentence of twenty-five years; possession of methamphetamine with intent to deliver, for which they each received a sentence of twenty-five years; and possession of drug paraphernalia, for which they each received a sentence of ten years. After they were convicted, they filed a motion for a new trial based upon the prosecutor's failure to reveal that a State's witness had been offered a negotiated plea in exchange for his testimony. The trial judge granted the motion, and the appellants were tried again in May of 1995. They were convicted again, and, this time, received life sentences on the manufacturing and possession with intent to deliver charges, and twenty years on the paraphernalia charge.[1]

In all, seven issues are presented on appeal. We find no error on any point and affirm the convictions.

### Sufficiency of the Evidence

Gary Dean Owens challenges the sufficiency of the evidence to support his possession with intent to deliver conviction. We are required to address sufficiency-of-the-evidence questions before all others. *Misskelley* v. *State,* 323 Ark. 449, 915 S.W.2d 702 (1996).

At the close of the State's evidence, and at the close of all evidence, Gary Dean Owens moved for a directed verdict on the possession with intent to deliver charge. He argued that there was no evidence he had transferred drugs in exchange for money or something of value. The trial court denied the motion. A directed-

---

[1] The appellants were subject to double the normal punishment because they had previously been convicted of violating the Controlled Substances subchapter of the Arkansas Criminal Code. Ark. Code Ann. § 5-64-408(a) (Repl. 1993).

verdict motion is a challenge to the sufficiency of the evidence. *Durham* v. *State*, 320 Ark. 689, 899 S.W.2d 470 (1995). The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the jury's verdict. Substantial evidence is that which is forceful enough to compel a conclusion one way or another and which goes beyond speculation or conjecture. *Davis* v. *State*, 317 Ark. 592, 879 S.W.2d 439 (1994). We review the evidence in the light most favorable to the appellee and consider only that evidence which supports the verdict. *Misskelley* v. *State*, *supra*.

The record reveals the following pertinent facts. At 12:55 a.m. on December 29, 1993, a warrant was issued allowing a search of the appellants' residence. The warrant was served at 1:15 a.m. Authorities recovered two packets which were later revealed to contain methamphetamine. One packet, found in the west bedroom of the house, contained 909 milligrams of a substance which was seventy-eight percent methamphetamine (approximately 709 milligrams). The other packet, found in the bedroom where Gary Dean Owens was apprehended, contained 1.57 grams of a substance which was fifty-three percent methamphetamine (approximately 832 milligrams). In addition, the search revealed glass jars containing cloudy liquid, all of which contained traces of methamphetamine; a metal spoon and a plastic scoop with traces of the drug; a container which held scales, syringes, spoons and plastic baggies; a container with 13.1 grams of ephedrine, a base ingredient in the manufacture of methamphetamine; and various other items which experts would later testify were consistent with the manufacture of methamphetamine such as Sunshine Super Blend B Vitamins, Liquid Fire, Red Devil Lye, coffee filters, baking soda, a funnel, and salt. Police also seized a gas mask, a paperback book on prescription drugs, and a police scanner which was on when the search took place. This evidence was introduced at trial through David Hyden, an Arkansas State Police officer who participated in the search and Norman Kemper, a forensic drug chemist with the State Crime Lab. The State presented other evidence, including the testimony of Barbara Sparks, which will be discussed later in this opinion. However, the physical evidence is all that is necessary to our consideration of this issue.

The argument that Owens makes on appeal is the same narrow argument he made in his directed-verdict motions — the

State failed to show that he actually transferred or delivered methamphetamine. It is true that the evidence in this case does not reveal an actual sale or transfer of methamphetamine by Gary Dean Owens. However, such evidence is not necessary to obtain a conviction of possession with intent to deliver. The key element of the crime is the *intent to deliver*, not actual delivery. See *People* v. *Wolfe*, 440 Mich. 508, 489 N.W.2d 748 (1992).

■ Substantial proof of Gary Dean Owens's *intent* to deliver *was* presented by the State. We need look no further than the amount of the drug recovered from the Owens residence. In executing the search warrant, officers seized over 1,500 milligrams of unadulterated methamphetamine. Possession of more than two hundred milligrams of methamphetamine gives rise to a presumption of intent to deliver.[2] Ark. Code Ann. § 5-64-401(d) (Repl. 1993); *Sanchez* v. *State*, 288 Ark. 513, 707 S.W.2d 310 (1986). The jury was instructed that they could consider the quantity of the drug possessed in determining Owens's intent. Since Owens possessed methamphetamine in an amount in excess of the statutory presumption, the evidence is sufficient to support his conviction. *Kilpatrick* v. *State*, 322 Ark. 728, 912 S.W.2d 917 (1995); *Sanchez* v. *State, supra.*

### Validity of the Search Warrant

The search warrant, which led to the seizure of the items listed above, was executed at 1:15 a.m. on December 29, 1993. It was obtained upon the application of Steve Brown, coordinator of the Fifth Judicial District Drug Task Force. The appellants argue that Brown failed to establish a factual basis to support a nighttime search.

■ In reviewing a trial court's ruling on a motion to suppress because of an alleged insufficiency of the affidavit, we make an independent determination based on the totality of the circumstances. We reverse the trial court's ruling only if it is clearly against the preponderance of the evidence. *Coleman* v. *State*, 308 Ark. 631, 826 S.W.2d 273 (1992).

The facts are as follows. Near midnight on December 29,

---

[2] Owens does not argue on appeal, nor did he argue below, that the state failed to present sufficient evidence of possession of the drugs.

1993, Brown submitted his affidavit and the affidavit of one Gary King for the purpose of obtaining the search warrant. Brown's affidavit is a detailed, handwritten document which contains, in paragraph six, a list of factors which he relied on in asking for a nighttime search warrant. The paragraph reads as follows:

> Access to the Dean Owens residence can be made only by a one lane dirt road which is filled with potholes, currently very muddy and the approach of vehicles can be observed from the residence. Vehicles can approach only within approximately two hundred and fifty (250) yards [twenty five (25) yards had been marked through] due to the condition of the driveway and curtilage.
>
> Informant information has revealed that Dean and Christie (Judy) Owens have been under the constant influence of methamphetamine for the past six (6) months and have because of this use exhibited characteristics consistent with a fear of being watched and approached by law enforcement authorities at their residence. Information addressed in Paragraph Four of this affidavit supports the possibility of automatic firearm(s) being in the possession of the occupants of the Dean Owens residence. Therefore, safe and speedy access to the Dean Owens residence by authorities can only be obtained under the cover of darkness and during an hour when it would be reasonable to believe that occupants of the residence would be less attentive to approaching officers. Speedy access is necessary both for the protection and safety of approaching officers as well as occupants of the residence and to ensure that objects to be seized are not destroyed or removed in that the residence is equipped with indoor plumbing which could easily facilitate the flushing or washing of methamphetamine out of the residence.
>
> Due to the above information and facts officers will be forced to approach the residence in their vehicles at a reduced or slow rate of speed, exit their vehicles approximately two hundred fifty (250) yards from the residence and approach the residence on foot causing dangerous exposure to themselves to detection and therefore officers need to approach the residence with the inherent protection of the cover of darkness.

Affiant further states that he has gathered intelligence that the occupants, Dean and Christine (Judy) Owens customarily sell methamphetamines out of the residence throughout the nighttime hours therefore removal of contraband by distribution is highly likely.

The information referred to from paragraph four was a report from the Franklin County Sheriff's Office that, during the previous forty-five days, a concerned citizen living within one mile of the Owens house reported what sounded like the firing of an automatic weapon from the Owens residence.

The judge issued the warrant. On the face of the warrant, he checked the appropriate blanks which indicated that the place to be searched was difficult of speedy access, that objects to be seized were in danger of imminent removal, and that the warrant could only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy. Prior to trial, both appellants moved to suppress the fruits of the search on the basis that the warrant was defective. The trial court denied the motion.

Ordinarily, a search warrant may only be executed between the hours of 6:00 a.m. and 8:00 p.m. However, a warrant may be executed at any time, day or night, if the issuing judicial officer has reasonable cause to believe that:

1) the place to be searched is difficult of speedy access; or

2) the objects to be seized are in danger of imminent removal; or

3) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy.

Ark. R. Crim. P. 13.2(c). The use of the word "or" makes it clear that the existence of any one of these factors may justify a nighttime search.

Mere conclusions in an affidavit will not support the issuance of a nighttime warrant. A factual basis is a prerequisite to obtaining such a warrant. See *Richardson* v. *State*, 314 Ark. 512, 863 S.W.2d 572 (1993); *Garner* v. *State*, 307 Ark. 353, 820 S.W.2d 446 (1991). The affiant in this case presented specific data and fact-based

conclusions regarding the difficulty of access, the possible removal of evidence, and the dangers presented to the officers. We hold that there was a sufficient factual basis for a nighttime search.

Judy Owens raises two additional points with regard to the validity of the warrant. First, she claims that the information contained in Steve Brown's affidavit was not shown to be reliable. The state argues that this issue was not before the trial court. However, during the suppression hearing, appellant's counsel questioned Steve Brown extensively concerning the reliability of his information and the court stated, "I'll let him go into that." This convinces us that the trial judge was aware that the appellant was raising the issue of reliability.

Steve Brown relied on various sources of information in the preparation of his affidavit. A person described as "Informant A" had been arrested by the Franklin County Sheriff's office on November 2, 1993, for public intoxication. While in custody, he told the authorities that on three occasions in the previous two weeks, he had been given methamphetamine by Gary Dean Owens while at the Owens residence. In his affidavit, Brown set forth the following factors bearing on the reliability of Informant A: his statement against penal interest in admitting he had possessed and used methamphetamine, the fact that he had provided information in the past to the Sheriff's office, and the fact that his physical characteristics, method of conversation and mannerisms were consistent with methamphetamine use. Brown also relied on information provided by Gary King. King was arrested on a traffic charge on December 28, 1993. When officers searched his vehicle, they discovered equipment of the type used in the manufacture of methamphetamine. King was arrested and gave a statement to the authorities in which he detailed his involvement with the appellants in the manufacture of methamphetamine. According to King, the manufacturing was accomplished both at his home and the appellants' home. He drew a map giving directions to the appellants' home and filled out an affidavit containing the information he had provided. Brown set forth the following factors bearing on the reliability of Gary King: his statement was against his penal interest, he swore to his testimony in the form of an affidavit, and he provided information which was substantiated by the authorities' intelligence files. Brown also relied on information provided by Franklin County Sheriff Kenneth Ross that access to the Owens

residence was difficult and that a citizen had reported the sound of automatic gunfire in the area.

■■ When an affidavit in a search warrant is based, in whole or in part, on hearsay, the affiant must set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. Ark. R. Crim. P. 13.1(b). In deciding whether to issue the warrant, the magistrate should make a practical, commonsense determination based on the totality of the circumstances set forth in the affidavit. *Thompson v. State*, 280 Ark. 265, 658 S.W.2d 350 (1983). Steve Brown's affidavit noted that the informants' statements tended to incriminate them, that their statements were based on personal observations of recent criminal activity, and that, in the case of Gary King, his statement could be corroborated. These are all factors which indicate reliability. *James v. State*, 280 Ark. 359, 658 S.W.2d 382 (1983); *Baxter v. State*, 262 Ark. 303, 556 S.W.2d 428 (1977). Regarding the information provided by Sheriff Ross, it was not necessary for the affidavit to establish the reliability of a public official. *Haynes v. State*, 314 Ark. 354, 862 S.W.2d 275 (1993). We hold that the affidavit in this case met the requirements of Rule 13.1(b).

Finally, Judy Owens argues that the search warrant itself was facially deficient. At issue is the following part of the warrant:

> YOU ARE HEREBY COMMANDED to search the place named for the property specified, serving this warrant and making the search (at any time in the day or night) (between the hours of 6:00 A.M. and 8:00 P.M.). . . .

■ Even though the judge found that circumstances existed to justify a nighttime search, he neglected to circle or otherwise mark one of the alternatives set forth in parenthesis above. We addressed this issue in *Holloway v. State*, 293 Ark. 450, 742 S.W.2d 550 (1987) (Supp. opinion on denial of rehearing), and refused to declare the warrant invalid. We noted that such technical attacks on warrants are not favored. As in *Holloway*, we are satisfied that the warrant showed a nighttime search was authorized.

### *Testimony of Barbara Sparks*

Barbara Sparks was a State's witness who testified that she had known the appellants for seven years. She said that, approximately

two months before the appellants were arrested, she worked with them in manufacturing methamphetamine. Six months prior to the arrests, she purchased chemicals for the appellants to use in the manufacturing process. She said that, primarily, Gary Dean Owens made the drug while Judy Owens handled business. She had purchased methamphetamine from Judy Owens about one month before the arrests, in a bedroom of the Owens home. In the year before the arrests, she had observed others going back to the bedroom and leaving a short time later. She also stated that she had observed the appellants using methamphetamine and that their preferred method was to inject the drug.

Prior to trial, the appellants filed a motion in limine to prohibit the introduction of this testimony. They argued at trial, as they do on appeal, that the evidence violated A.R.E. 404(b) and A.R.E. 403. The trial court allowed Ms. Sparks to testify as to her knowledge of the appellants' activities, so long as they were not too remote in time.

A.R.E. 404(b) reads as follows:

> Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Generally, evidence of other crimes, wrongs, or acts is not admissible merely to prove the bad character of the defendant and to show that his actions conformed to that character. However, if the evidence is relevant to the main issue of the case, in the sense of tending to prove some material point rather than to prove the defendant is a criminal, the evidence may be admissible with a proper cautionary instruction by the court. *Lindsey* v. *State*, 319 Ark. 132, 890 S.W.2d 584 (1994).[3] In *Sullivan* v. *State*, 289 Ark. 323, 711 S.W.2d 469 (1986), we said the following:

> We interpret Rule 404(b) as meaning that if the evidence of

---

[3] The appellants did not ask the court to give the jury a cautionary instruction on the limited purpose of the evidence so we will not consider that issue. *Sasser* v. *State*, 321 Ark. 438, 902 S.W.2d 773 (1996).

prior bad acts is relevant to show the offense of which the appellant was accused occurred, and is thus not being introduced to show only bad character, we will not exclude it.

■ Barbara Sparks's testimony falls within the "independent relevance" concept enunciated in *Sullivan* and *Lindsey*. The jury in this case had the task of deciding whether the appellants engaged in the manufacture of methamphetamine, possessed methamphetamine with the intent to deliver, and possessed drug paraphernalia. Barbara Sparks's testimony was relevant to the issues of whether, in this case, the appellants were actually manufacturing methamphetamine, were actually using certain ordinary household items in the manufacturing process, merely possessed the drug or possessed it with the intent to deliver, and whether the items found in the house could be used as drug paraphernalia. See Ark. Code Ann. § 5-64-101(v) (Repl. 1993). Her testimony was relevant to show that these offenses of which the appellants were accused occurred. Thus, Rule 404(b) was not violated.

The appellants cite *Rios v. State*, 262 Ark. 407, 557 S.W.2d 198 (1977) in support of their argument. In that case, the appellant was charged with delivery of marijuana. The State presented evidence that, after the sale of marijuana occurred, the appellant sold another drug later that day. We held that the admission of the other drug sale was reversible error. In *Rios*, the subsequent sale was not independently relevant, nor did it pertain to the offense actually charged, nor was it useful in shedding any light on the appellant's intent.

■ In several recent cases, we have recognized that when a defendant is legitimately charged with possession with intent to deliver, evidence of prior drug sales, if not too remote in time, are admissible to show intent. *Scroggins v. State*, 312 Ark. 107, 848 S.W.2d 400 (1993); *Holloway v. State*, 293 Ark. 438, 738 S.W.2d 796 (1987); *Lincoln v. State*, 285 Ark. 107, 685 S.W.2d 166 (1985). While Barbara Sparks testified to more than prior drug sales, the cases are analogous because they recognize the value of such evidence to the jury in those drug cases in which intent or purpose is an issue.

A trial court is accorded broad discretion in ruling on Rule 404(b) questions. *Larimore v. State*, 317 Ark. 111, 877 S.W.2d 570 (1994). In light of the foregoing, we find no abuse of discretion in

admitting the testimony of Barbara Sparks. A trial court is likewise entitled to great discretion in ruling on issues which arise under A.R.E. 403. *Robinson v. State,* 314 Ark. 243, 861 S.W.2d 548 (1993). We are convinced that, although Ms. Sparks's testimony was detrimental to the appellants, its probative value was not outweighed by the danger of unfair prejudice.

### Failure to Give Proffered Jury Instruction

Both appellants proffered a jury instruction on the manufacturing of methamphetamine charge which included the following language:

> Except that "manufacturing" does not include the preparation or compounding of a controlled substance by an individual for his own use.

That language is contained in AMCI 2d 6405 as a bracketed part. The appellants claim that, since there was some evidence at trial that the amount of methamphetamine and the drug paraphernalia found in the house was consistent with personal use, the proffered instruction was warranted.

At the outset, we address the State's contention that the appellants' argument is procedurally barred due to their failure to abstract the manufacturing instruction which was actually given by the court. Since the appellants did abstract the proffered instruction and their presentation of the issue to the court, and since this is a case involving life imprisonment which requires us to review the record for all errors, see Ark. Sup. Ct. R. 4-3(h), we will, out of an abundance of caution, address the merits of this issue. See *Chenowith v. State,* 321 Ark. 522, 905 S.W.2d 838 (1995).

The record reflects that the jury was instructed on the manufacturing charge as follows:

> Gary Dean Owens and Judy Christine Owens are charged with the offense of manufacturing methamphetamine. To sustain this charge, the State must prove the following things beyond a reasonable doubt [:] that Gary Dean Owens and/or Judy Christine Owens knowingly or purposely produced or prepared or propagated or compounded or converted or processed methamphetamine directly or indirectly by means of chemical synthesis or by a combination of extraction and chemical synthesis.

The appellants claim that this instruction should have contained the "personal-use exemption" language from the bracketed portion of AMCI 2d 6405. Implicit in the appellants' argument is their contention that a person cannot be charged with manufacture of methamphetamine if that substance is manufactured for the person's own use. This is incorrect. As we explained in *Patty v. State*, 260 Ark. 539, 542 S.W.2d 494 (1976) and *Bedell v. State*, 257 Ark. 895, 521 S.W.2d 200 (1975), *cert. denied*, 430 U.S. 931 (1977), the personal-use exemption applies only to the *preparation* or *compounding* of a controlled substance. It is not applicable when other means of manufacture have been used. In *State v. Childers*, 41 N.C. App. 729, 255 S.E.2d 654 (1979), the North Carolina court made this cogent observation:

> The plain meaning of the exception is to avoid making an individual liable for the felony of manufacturing a controlled substance in the situation where, being already in possession of a controlled substance, he makes it ready for use (i.e., rolling marijuana into cigarettes for smoking) or combines it with other ingredients for use (i.e., making the so-called "Alice B. Toklas" brownies containing marijuana).

Other courts have recognized that the personal-use exception does not apply to the *creation* of the controlled substance, but to the preparation or compounding of a substance already in existence. *State v. County Court for Columbia County*, 82 Wis. 2d 401, 263 N.W.2d 162 (1978); *People v. Pearson*, 157 Mich. App. 68, 403 N.W.2d 498 (1987).

There is abundant evidence in this case that, irrespective of whether the appellants made personal use of their product, they created the product, manufacturing it by means other than mere preparation or compounding. Thus, the personal-use exception is not applicable, and the trial court was correct to refuse the instruction.

The appellants also argue that the trial court failed to express its reasons for modifying AMCI 2d 6405. Without deciding whether the refusal to give the bracketed portion of an AMCI constitutes a modification, we note that this issue was not raised below until after the trial was completed. The appellants' objection on this ground was not timely and therefore will not be considered. See *Houston v. State*, 293 Ark. 492, 739 S.W.2d 156 (1987).

### Failure to Limit Sentencing Range

The appellants asked the court to limit the sentencing range to the term of years received in the first trial: twenty-five years on the manufacturing and possession with intent to deliver counts and ten years on the possession of paraphernalia count. They also proffered verdict forms on the manufacturing and possession with intent to deliver counts which reflected that range of sentences. The trial court allowed the jury to consider the full range of punishment available on all offenses. As a result, the appellants received greater sentences on retrial than they had in the first proceeding.

The imposition of a harsher sentence upon retrial is not, in and of itself, constitutionally offensive. When appellants are retried by a jury, a greater sentence is not prohibited so long as there is a properly controlled retrial in which the jury is not informed of the prior sentences. *Chaffin* v. *Stynchcombe*, 412 U.S. 17 (1973). The appellants point to the voir dire portion of the trial and note that there were at least two instances when the panel, through the responses of venirepersons, was informed that a previous trial had occurred. However, the record is bereft of any evidence that the jury was informed of the *result* of the previous trial. The Court recognized in *Stynchcombe* that, while the jury might be aware of a prior trial, it does not follow that the jury will be aware of its result. In the absence of any evidence that the jury was informed of the outcome of the appellants' first trial, there is no need to delve further into this issue. See *Smith* v. *State*, 286 Ark. 247, 691 S.W.2d 154 (1985).

### Evidentiary Errors at Sentencing Hearing

The appellants were tried in a bifurcated proceeding. During the sentencing phase, the prosecutor made this remark in the rebuttal portion of his closing argument:

> they got up here and they tried to give you this song and dance because they don't want to go to prison. I can assure you I would have let them go to prison and I want them to go to prison.

The appellants moved for a mistrial on the ground that the prosecutor was making reference to a plea offer. The trial judge denied the motion.

 The appellants claim this purported reference to a negotiated plea violates A.R.E. Rule 410. That rule prohibits the mention of, *inter alia*, offers to plead to the crime charged or any other crime. The evil to be avoided by Rule 410 is the use of a plea offer against a defendant as an admission against interest. *Brown* v. *State*, 288 Ark. 517, 707 S.W.2d 313 (1986). Even if the prosecutor's remark can be characterized as a reference to a plea offer, and there is some doubt that it can, the remark was made during the sentencing phase of the trial. The appellants had already been convicted. We cannot say that they were so prejudiced that they were entitled to a mistrial.

Judy Owens raises an additional argument regarding an occurrence during the sentencing phase. During cross-examination of court clerk Janice Morris, the prosecutor asked, "Do you have knowledge that [the appellants] have been tried on possession of a controlled substance with intent to deliver and that they've been found guilty of that?" The appellants asked for a mistrial, asserting that the prosecutor was making a reference to the *first* trial. The prosecutor explained that he was talking about "this trial. They have been found guilty today." The judge denied the mistrial motion and asked the prosecutor to make it clear that he was referring to the present trial. The prosecutor then asked Ms. Norris, "Are you familiar with the jury's decision today on the trial we've had?"

 A mistrial is an extreme remedy that should only be granted when justice cannot be served by continuing the trial. *Clayton* v. *State*, 321 Ark. 602, 906 S.W.2d 190 (1995). Such an extreme remedy was not warranted in this instance. Nothing in the prosecutor's first question expressly or impliedly referenced the first trial. In his second question, the prosecutor made it clear that he was referring to the verdict just handed down.

Finally, in the conclusion to his brief, Gary Dean Owens urges us to consider the cumulative error in the record as a basis for reversal. As we have found no errors, there is no need to address that point.

### Compliance with Rule 4-3(h)

The record has been reviewed in accordance with Arkansas Supreme Court Rule 4-3(h), and it has been determined that there

were no errors with respect to rulings on objections or motions prejudicial to the appellants not discussed above.

Affirmed.

DUDLEY, J., not participating.