James Alan STANTON *v.* STATE of Arkansas

CR 00-583 42 S.W.3d 474

Supreme Court of Arkansas
Opinion delivered May 3, 2001

*Robert N. Jeffrey*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant James Alan Stanton was convicted in the Cleveland County Circuit Court of manufacturing a controlled substance (crystal methamphetamine); possession of a controlled substance with intent to deliver; simultaneous possession of drugs and firearms; possession of drug paraphernalia; and felon in possession of a firearm. Appellant was sentenced as a habitual offender to life imprisonment on each of the first three counts and twenty years' and twelve years' imprisonment, respectively, on the last two counts. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). For reversal, Appellant argues that the trial court erred in denying his suppression motion and his motion for directed verdict. We find no error and affirm.

## I. Motion to Suppress

Appellant argues that the trial court erred in denying his pre-trial motion to suppress evidence that was obtained in a search of the residence of Appellant's girlfriend, Patricia Bombino. Evidence obtained during the search included more than one gram of crystal methamphetamine, numerous items of drug paraphernalia, a handgun, night-vision goggles, and all the ingredients and utensils needed to manufacture methamphetamine. The search was conducted at approximately 3:00 a.m. on December 12, 1998, pursuant to a warrant that was obtained by Cleveland County Sheriff's Deputy Trent Vollmer. The affidavit was based in large part on information supplied to Vollmer from an informant. Appellant contends

that the affidavit for the search warrant was insufficient because it failed to establish particular facts demonstrating the reliability of the informant. We disagree.

In reviewing a trial court's denial of a motion to suppress, we make an independent examination of the issue based on the totality of the circumstances, viewing the evidence in the light most favorable to the State. *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001); *Benson v. State*, 342 Ark. 684, 30 S.W.3d 731 (2000). We will reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Id.* When an affidavit for a search warrant is based, in whole or in part, on hearsay, the affiant must set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. *Owens v. State*, 325 Ark. 110, 926 S.W.2d 650 (1996) (citing Ark. R. Crim. P. 13.1(b)). In deciding whether to issue the warrant, the magistrate should make a practical, common-sense determination based on the totality of the circumstances set forth in the affidavit. *Id.*

There is no fixed formula in determining an informant's reliability. *James v. State*, 280 Ark. 359, 658 S.W.2d 382 (1983). Factors to be considered in making such a determination include whether the informant's statements are (1) incriminating; (2) based on personal observations of recent criminal activity; and (3) corroborated by other information. *Owens*, 325 Ark. 110, 926 S.W.2d 650. Additionally, facts showing that the informant has provided reliable information to law enforcement in the past may be considered in determining the informant's reliability in the present case. *See Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998); *Moore v. State*, 297 Ark. 296, 761 S.W.2d 894 (1988). Failure to establish the bases of knowledge of the informant, however, is not a fatal defect if the affidavit viewed as a whole "provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place." Rule 13.1(b). *See also Langford*, 332 Ark. 54, 962 S.W.2d 358; *Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994).

The State contends that the prosecution was not required to establish the informant's reliability in this case, because the informant's identity was revealed to the issuing judge. This court has consistently held that an affidavit for a search warrant need not contain facts establishing the veracity and reliability of *non*confidential informants such as police officers, public employees, victims, and other witnesses whose identity is known. *State v. Rufus*, 338

Ark. 305, 993 S.W.2d 490 (1999) (citing *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996); *Owens*, 325 Ark. 110, 926 S.W.2d 650; *Haynes v. State*, 314 Ark. 354, 862 S.W.2d 275 (1993)). Thus, "no additional support for the reliability of witnesses is required where the witness volunteered the information as a good citizen and not as a confidential informant whose identity is to be protected." *Moore*, 323 Ark. at 539, 915 S.W.2d at 290 (citing *Simmons v. State*, 278 Ark. 305, 645 S.W.2d 680 (1983)). This is true even when the citizen informant is not a "model citizen." *Id.*

In the present case, the informant, Kristine Wright, was referred to in the affidavit only as "CI-CCSO-007." The record, however, demonstrates that Deputy Vollmer submitted her statement to the judge, which was handwritten by another officer and signed by Wright, at the same time that he presented his affidavit. Wright's name, address, date of birth, and social security number were contained in her statement. Accordingly, we are inclined to agree with the State that Wright was not acting as a confidential informant whose identity was to be protected.

In any event, regardless of the fact that her identity was known, the affidavit sufficiently establishes Wright's reliability. The affidavit describes two separate instances in which Vollmer received information from Wright regarding the criminal activity of Patricia Bombino. Particularly, the affidavit reflects that on November 30, 1998, Vollmer received a telephone call from Wright, informing him that Bombino was "cooking crystal meth" at her residence. Wright also told Vollmer that she had been supplying information to the narcotics division of the Pine Bluff Police Department. Vollmer then contacted a narcotics detective in Pine Bluff, who stated that Wright had "given reliable information in the past." After speaking with the Pine Bluff detective, Vollmer reported the information to his chief deputy, Jack Rodgers. Rodgers instructed Vollmer and another deputy to conduct surveillance on Bombino's residence. While they were watching the residence, the officers became aware of the fact that they had been "spotted" by persons at the residence. About three minutes later, the officers observed a fire being started behind the residence. The fire looked like some type of flammable material had been added to it.

The next time that Vollmer was contacted by Wright, she corroborated the officers' surveillance activities. Particularly, Wright stated that Bombino had seen the officers watching her house and that, as a result, Bombino had burned everything.

Wright also warned Vollmer that Bombino had surveillance cameras that watched the road in front of the residence, and that there were "night vision devices" inside the home.

Vollmer was contacted by Wright a third time on December 11, 1998. On this occasion, Wright stated that earlier that day, she had been at Bombino's residence and observed a "crystal meth lab" located in Bombino's bedroom. Wright stated that Bombino had some powder at the residence and that they had purchased some denatured alcohol that day from Lowe's in Pine Bluff. Wright also observed a butane bottle in the shed. Based on this information, Vollmer sought and obtained a search warrant for Bombino's residence.

■ The foregoing information supports the trial court's finding that the informant's reliability had been sufficiently established. The affidavit demonstrated that Wright supplied information to Vollmer that caused Vollmer and another officer to conduct surveillance on Bombino's home. The next time that Vollmer spoke with Wright, she informed the officer that she knew he had conducted surveillance on Bombino's home. She further corroborated the activities that the officers had witnessed at the residence, namely that the officers had been observed by Bombino and that immediately thereafter, Bombino had burned incriminating evidence. Moreover, Wright's statements were based on her personal observations of recent criminal activity. She stated that she had been in Bombino's home on December 11, 1998, the same date that she contacted Vollmer, and that she had observed some powder at the residence and what she described as a "crystal meth lab." Furthermore, the affidavit reflected that Vollmer was informed by a Pine Bluff detective that Wright had given reliable information to that department in the past. We thus affirm the trial court's denial of Appellant's motion to suppress.

## II. Sufficiency of the Evidence

■ The remaining point on appeal is Appellant's assertion that the trial court erred in denying his motion for directed verdict on each of the offenses charged. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Britt*, 344 Ark. 13, 38 S.W.3d 363; *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id*. Substantial evidence is evidence that is of sufficient

certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Britt*, 344 Ark. 13, 38 S.W.3d 363. On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.* With this standard in mind, we discuss the evidence supporting each charge.

Appellant was convicted of manufacturing a controlled substance in violation of Ark. Code Ann. § 5-64-401(a) (Repl. 1997). Arkansas Code Annotated § 5-64-101(m) (Repl. 1997) provides in pertinent part:

> "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container[.]

According to testimony from Deputy Vollmer, Arkansas State Police Detective Dennis Roberts, and Arkansas State Crime Laboratory Chemist Gene Bangs, the search revealed the presence of all materials necessary for manufacturing methamphetamine, including ephedrine or pseudoephedrine tablets; empty blister pill packs; starting fluid; paint thinner; lithium (battery) strips; various types of solvents; acetone; denatured alcohol; electronic scales; Mason jars; metal fittings; funnels; empty plastic soda bottles; a tank of anhydrous ammonia; syringes; small Ziplock plastic bags; and numerous spoons containing trace amounts of methamphetamine. The materials were found inside the residence, as well as in trash bags found in the back of Appellant's truck. Additional materials were found in a burn pile behind the residence. Officers also found 1.25 grams of completed product, methamphetamine hydrochloride.

Additionally, the State presented evidence that approximately one week before the search, Appellant had purchased six "AA" lithium batteries from Radio Shack. Appellant admitted that his name and address were on the receipt. Appellant also admitted that the safe found in Bombino's bedroom was his. Officers testified that numerous materials were found inside and around that safe, namely lithium strips soaking in a petroleum-based solution, syringes, electronic scales, and small Ziplock plastic bags used for packaging controlled substances.

Moreover, the State introduced a letter to Bombino that was written by Appellant from his jail cell. In the letter, which is reproduced as written, Appellant states:

> So, you were going to let me do one more "reaction" and then you was going to tell me to move'on!
>
> ....
>
> As far as me and my business you let to many of your friends know my business.
>
> Do you have any idea about the stuff I *got out* of your house[?] ... They would have *loved* to got there hands on 5,000 soaking plus 280 g powder, 72 batt., 4 cases of fluid, 1 gallon of acid.

Testimony from the State's witnesses established that the term "reaction" referred to a chemical reaction, which is a necessary step in manufacturing methamphetamine. On cross-examination, Appellant admitted that all of the items mentioned in his letter are ingredients in a methamphetamine lab. Appellant also admitted that he had seen methamphetamine manufactured before.

Bombino testified that at the time of the search, she had been having a sexual relationship with Appellant. During the two weeks prior to the search, Appellant had been staying at her residence and had been bringing some of his possessions to her home. She testified that Appellant was going to show her how to make methamphetamine.

 We conclude that the evidence, viewed in a light most favorable to the State, was sufficient to support Appellant's conviction for manufacturing methamphetamine. *See Chapman v. State*, 343 Ark. 643, 38 S.W.3d 305 (2001). The jury did not have to resort to speculation or conjecture to find that Appellant and Bombino either had manufactured methamphetamine or were currently in the process of manufacturing methamphetamine. We thus affirm on this point.

 The remaining convictions stem from Appellant's possession of contraband, namely methamphetamine, a firearm, and various items of drug paraphernalia. To convict one of possessing contraband, the State must show that the defendant exercised control or dominion over it. *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 823 (1993), *cert. denied*, 510 U.S. 1197 (1994). Neither exclusive nor

actual, physical possession is necessary to sustain a charge. *Bailey v. State*, 307 Ark. 448, 821 S.W.2d 28 (1991). Rather, constructive possession is sufficient. *Id.* This court has previously explained:

> Under our law, it is clear that the State need not prove that the accused physically possessed the contraband in order to sustain a conviction for possession of a controlled substance if the location of the contraband was such that it could be said to be under the dominion and control of the accused, that is, constructively possessed.

*Darrough v. State*, 330 Ark. 808, 811, 957 S.W.2d 707, 708 (1997) (citing *Heard*, 316 Ark. 731, 876 S.W.2d 231; *Crossley v. State*, 304 Ark. 378, 802 S.W.2d 459 (1991)). Moreover, constructive possession may be implied when the contraband is in the joint control of the accused and another; however, joint occupancy, alone, is insufficient to establish possession or joint possession. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998). The State must establish that (1) the accused exercised care, control, and management over the contraband, and (2) the accused knew the matter possessed was contraband. *Id.*; *Darrough*, 330 Ark. 808, 957 S.W.2d 707.

The evidence presented during Appellant's trial established that he possessed methamphetamine. Bombino testified that when she arrived home on the evening of December 11, approximately four hours before the search warrant was executed, she found Appellant asleep on the floor in the "glass room," a room that had french doors leading to it. She stated that there was some money, approximately two hundred dollars, spread out on Appellant's chest and on the floor around him. She also observed a small bag of crystal methamphetamine near Appellant. She stated that Appellant had his nine-millimeter gun, either laying on his chest or in his hand. She tried to awaken him, but could not. At that point, she took the bag of methamphetamine and put it in a drawer in the kitchen. She also gathered up the money and put it on top of the kitchen counter, near the drawer where she put the drugs.

Detective Roberts corroborated Bombino's testimony that the money was found on the kitchen counter and that the bag of drugs was found nearby in a kitchen cabinet. The chemist testified that the bag of suspected drugs contained 1.698 grams of methamphetamine and either ephedrine or pseudoephedrine. He further testified that when separated, the substance was 73.5 percent or 1.25 grams of methamphetamine hydrochloride.

■ The foregoing testimony demonstrates substantial evidence to support the jury's conclusion that Appellant possessed a controlled substance. The drugs were observed in an area near where Appellant had fallen asleep and where he undeniably could have exercised care, control, and management of the controlled substance. Moreover, there was sufficient evidence to show that Appellant had knowledge that the substance was contraband. Appellant himself testified that he had seen crystal methamphetamine manufactured before. Additionally, as set out above, Appellant made incriminating statements in his letter to Bombino.

■ Furthermore, there is substantial evidence that he possessed the drugs with intent to deliver them. Arkansas Code Annotated § 5-64-401(d) (Repl. 1997) creates a rebuttable presumption that possession of more than two hundred milligrams of methamphetamine demonstrates an intent to deliver. *See Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998). Here, the bag contained 1.25 grams of methamphetamine, or roughly six times the statutory presumption. Appellant presented no evidence to rebut the presumption. The presumption amounts to substantial evidence of intent to deliver. *Id.*; *Heritage v. State*, 326 Ark. 839, 936 S.W.2d 499 (1996); *Owens*, 325 Ark. 110, 926 S.W.2d 650. Likewise, evidence of Appellant's possession of a firearm is relevant to prove intent to deliver. *See Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994).

■ There is also substantial evidence that Appellant simultaneously possessed drugs and a firearm. Arkansas Code Annotated § 5-74-106 (Repl. 1997) provides that no person shall unlawfully commit a felony violation of section 5-64-401 while in possession of a firearm. We have already established that there was sufficient evidence to convict Appellant of possessing methamphetamine with intent to deliver and manufacturing methamphetamine, in violation of section 5-64-401. To convict of the separate offense found in section 5-74-106, the State must prove two elements: (1) the defendant possessed a firearm, and (2) a connection existed between the firearm and the controlled substance. *Gilbert v. State*, 341 Ark. 601, 19 S.W.3d 595 (2000) (citing *Johnson v. State*, 333 Ark. 673, 972 S.W.2d 935 (1998); *Manning v. State*, 330 Ark. 699, 956 S.W.2d 184 (1997); *Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995)).

■ Bombino testified that she observed Appellant asleep on the floor with his gun either laying on his chest or in his hand. She

described the gun as having a laser sight on it. She also observed the bag of drugs near him. Bombino testified that the gun belonged to Appellant and that she had seen it laying around the house on more than one occasion. In fact, she stated: "He just always had it." Detective Roberts testified that he found the gun, with the magazine still in it, laying on the floor in the "glass room," where Appellant had fallen asleep. Roberts confirmed that the gun had a laser sight. Roberts further described the general connection between firearms and drugs, testifying that of the fifty methamphetamine labs he had seen in the last three years, he could not recall one in which a firearm was not found. He further stated that the majority of these weapons are armed with laser sights. This testimony amounts to substantial evidence that Appellant possessed a firearm and that a connection existed between the drugs and the firearm. Moreover, because Appellant does not contest the fact that he was a convicted felon at the time, we conclude that there was substantial evidence to support his conviction for being a felon in possession of a firearm.

Lastly, there was substantial evidence that Appellant was in possession of drug paraphernalia. Arkansas Code Annotated § 5-64-101(v) (Repl. 1997) provides:

> The term "drug paraphernalia" means all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of subchapters 1-6 of this chapter (meaning the Controlled Substances Act of this state).

Specifically included within the definition of "drug paraphernalia" are scales and balances designed for weighing controlled substances; spoons and other containers used in compounding controlled substances; containers used to store controlled substances; hypodermic syringes used to inject controlled substances; and objects, such as bongs, used for ingesting or inhaling marijuana.

Here, the evidence clearly established the existence of numerous items of drug paraphernalia inside the residence and in the back of Appellant's truck. Inside the residence, officers found numerous syringes; spoons with methamphetamine residue; Mason jars used to soak the ephedrine pills; small plastic Ziplock bags;

electronic scales; and a bong used to smoke marijuana. In the back of Appellant's truck, officers found four syringes and an empty box for the syringes. We thus affirm the trial court's denial of Appellant's motion for directed verdict.

### III. Rule 4-3(h)

Because Stanton received a sentence of life imprisonment, the record in this case has been reviewed pursuant to Ark. Sup. Ct. R. 4-3(h) for adverse rulings objected to by Appellant but not argued on appeal. No such reversible errors were found. For the aforementioned reasons, the judgment of conviction is affirmed.