# Lloyd C. JONES *v.* STATE of Arkansas

CR 01-1095                                   74 S.W.3d 663

Supreme Court of Arkansas
Opinion delivered May 16, 2002

622

*Bowden Law Firm, P.A.*, by: *David O. Bowden*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Lloyd C. Jones appeals the judgment of the Sebastian County Circuit Court, Greenwood District, convicting him of the rape of his estranged wife and sentencing him to ten years' imprisonment. Jones raises four points for reversal, one of which is an issue that this court has not heretofore considered: Whether Arkansas law prohibits the rape of one spouse by another by means of forcible compulsion. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We find no merit to Jones's arguments, and we affirm.

## I.   Sufficiency of the Evidence

For his first point on appeal, Jones argues that there was not sufficient evidence to convict him of rape, and that the trial court erred in denying his directed-verdict motion. We treat

a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Branscum v. State*, 345 Ark. 21, 43 S.W.3d 148 (2001); *Stanton v. State*, 344 Ark. 589, 42 S.W.3d 474 (2001). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture. *Id.* On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.* Before we review the evidence presented below, we must address the point of procedure raised by the State.

■ The State argues that this point is procedurally barred because Jones's directed-verdict motion below did not specify the proof allegedly missing from the prosecutor's case. We disagree. The record reflects that Jones's attorney moved for a directed verdict on the ground that the State had failed to prove that there was coercion or that the rape actually occurred. Counsel admitted that sexual activity, and even deviate sexual activity had occurred between the two, but that Jones's "point is consensual." We view counsel's argument as a challenge to the proof submitted on the issue of forcible compulsion, which is the argument he makes on appeal. As such, we will review the merits of this point.

Jones was charged with the offense of rape pursuant to Ark. Code Ann. § 5-14-103 (Repl. 1997). Particularly, the State charged that Jones engaged in sexual intercourse or deviate sexual activity with his estranged wife, Charis Jones, by forcible compulsion. "Forcible compulsion" is defined in Ark. Code Ann. § 5-14-101(2) (Repl. 1997) as "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Charis testified that on the early morning of December 14, 2000, between 2:15 and 3:00 a.m., her husband Lloyd Jones broke into the trailer where Charis was living with her three children and a friend and her two children. According to Charis's testimony, she and Jones were separated at the time and had been since the week before Halloween 2000. On the date in question, she was asleep in her bed when she awoke to find Jones standing over her. Jones placed duct tape on her mouth and attempted to hand-

cuff her, but he was unable to get the handcuffs on her completely. Jones also held a box cutter blade to her neck and told her that if she screamed or called to her roommate, Amy Gothard, he would kill the children and her roommate.

At some point, Charis was able to get the duct tape off her mouth. Jones did not retape her mouth. Jones then asked her to "suck on his penis." Charis agreed to do so. Jones then instructed Charis to bend over, and he inserted his penis into her anus. When he had finished engaging in anal intercourse, Jones went into the bathroom and cleaned off his penis. He then told Charis that he wanted her to perform oral sex again. When he tired of that, Jones asked to have vaginal intercourse with Charis, and she complied.

When asked by the prosecutor why she complied with Jones's requests for sex, Charis stated that she was afraid of Jones. When asked if she had consented to the sexual acts at any time during the incident, Charis stated that she had not. She explained that she let Jones do those things and she did not call for help or attempt to get away from him, because she "was scared that he was going to hurt us." She explained further that her fear stemmed from the fact that "he sat there and said he was going to do harm to my children and to my friend and her kids." Charis also stated that after they had vaginal intercourse, Jones told her that he was going to come and live with her in the trailer, and that they were going to be a family again. Charis testified further that Jones told her "that if I wanted out of the marriage by divorce I wouldn't get it because the only way to get out of our marriage was like our wedding vows is through death and I would have to die."

■ This court has repeatedly held that the uncorroborated testimony of a rape victim is sufficient to sustain a conviction. *See, e.g., Russey v. State*, 336 Ark. 401, 985 S.W.2d 316 (1999); *Williams v. State*, 331 Ark. 263, 962 S.W.2d 329 (1998); *Freeman v. State*, 331 Ark. 130, 959 S.W.2d 400 (1998). Accordingly, we could end our review of the evidence here. In this case, however, we have corroboration of the victim's testimony in the form of a custodial confession by Jones, which was played for the jury.

In his statement, Jones admitted that on the date in question, he broke into Charis's trailer, placed duct tape on her mouth, and threatened her with a box cutter. Although Jones claimed that the box cutter did not have a blade in it at the time, he admitted that he held the box cutter up to Charis's neck and told her that if she screamed, "[he] might harm her friend Amy." He admitted that Charis engaged in the sexual acts "out of fear and not because she wanted to." He also admitted that he had forced Charis to engage in similar sexual acts before, but he maintained that this was the only time that he had placed a knife to her throat. He admitted that he had a problem and he stated: "I would like for somebody to please help me get help, counseling, 'cause I want counseling 'cause I don't really understand why I am doing this, why I do this." This evidence certainly corroborates the victim's testimony that Jones forced her to engage in the sexual acts out of fear that he would harm her, her children, her friend, and her friend's children. Accordingly, we conclude that there was more than sufficient evidence to convict Jones of rape, and we affirm the trial court's denial of a directed verdict.

## II. Rape Within the Marriage

For his second point for reversal, Jones raises an issue of first impression in this state, namely whether Arkansas law recognizes the crime of rape within a marriage. Jones contends that at common law in England, there was no crime of rape within a marriage. He asserts that this rule was based on the theory that consent to any and all sexual relations was deemed to have been given as part of the marriage contract. He asserts further that when the legislature enacted Ark. Code Ann. § 1-2-119 (Repl. 1996), it thereby adopted the common law of England. Thus, he argues that the legislature has never specifically recognized the crime of rape between spouses. The State argues, and Jones does not dispute, that this point is procedurally barred because it was not raised in the trial court. *See Ramaker v. State*, 345 Ark. 225, 46 S.W.3d 519 (2001); *Branscum*, 345 Ark. 21, 43 S.W.3d 148. Notwithstanding, we reject Jones's argument on this point.

In adopting our Criminal Code, the General Assembly specifically declared: "The provisions of this code shall govern any

prosecution for any offense defined by this code and committed after January 1, 1976." Ark. Code Ann. § 5-1-103(a) (Repl. 1997). Section 5-14-103(a)(1), which is part of the Criminal Code, provides that a person commits the crime of rape by engaging in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Under this section, a perpetrator is "[a] person" and the victim is "another person." Thus, on its face, this section is neutral both as to gender and as to the relationship, if any, between the perpetrator and the victim. This section controls all prosecutions for the crime of rape involving forcible compulsion, including those instances of forcible rape between spouses. Because the statute controls, the common law of England is irrelevant. Accordingly, we affirm on this issue.

### III. Admissibility of Explicit Photographs under the Rape-Shield Statute

For his third point on appeal, Jones argues that the trial court abused its discretion in denying the admission of several photographs that graphically depict the victim engaging in oral sex and various acts of masturbation. In his written motion, filed pursuant to Ark. Code Ann. § 16-42-101 (Repl. 1999), Jones claimed that the photographic evidence was crucial to refute the allegations against him that he forced the victim to engage in deviate sexual acts. The trial court conducted an *in camera* hearing on the admissibility of the photographs, during which Jones testified that the photographs were taken by him on two different dates in June 2000. Jones identified himself as the other person in some of the photographs. At the conclusion of the hearing, the deputy prosecutor argued that the photographs were not relevant to the issue of the victim's consent on the night of the rape. He argued that the photographs were not in any way connected to the events of this case. Jones's attorney, on the other hand, argued that the photographs were relevant to show that Jones and the victim, as husband and wife, had engaged in consensual anal and oral intercourse. The trial court took the matter under advisement.

The following day, the trial court entered a written order, finding that some of the photographs may be relevant to the issue of consent. The order provided that Jones would be allowed to

ask the victim whether she had engaged in anal and oral sex with Jones during their marriage. If the victim admitted that she had, even if she claimed that it had been without her consent, the photographs would not be admissible. However, if she denied the acts, the photographs may become admissible, subject to other objection by the State.

During the trial, the victim admitted that she and Jones had engaged in anal and oral intercourse during their marriage, but she claimed it had been without her consent. Defense counsel then attempted to impeach her testimony and sought to introduce the photographs. The trial court denied the request, but allowed defense counsel to ask her about one particular photograph depicting an act of anal manipulation with a dildo. The trial court ruled further that the photograph itself, which the judge described as "highly prejudicial" and "more inflammatory than necessary," would not be admissible unless the victim denied posing for the photograph. Initially, the victim admitted that such a photograph of her had been taken, but she claimed that it was taken without her consent, after she had just been awakened.

At that point, the jury was taken out of the courtroom to allow the parties to argue the admissibility of the photograph. The prosecutor asked the judge if he could have the opportunity to show the photographs to the victim, as she had not seen them in some time and may not have recalled what was depicted in the particular photograph referred to by defense counsel. The trial court allowed this and ruled that after she looked at them, he would allow defense counsel to ask the question again. Whereupon the jury was recalled, and defense counsel asked the victim: "Did you not on or around June of 2000 pose in the nude with your husband, having anal sex with a dildo?" The victim answered: "Yes." Defense counsel then asked her if it was consensual, and the victim said "No." At that point, defense counsel again attempted to introduce the photograph, arguing that it demonstrated consent. The trial court disagreed that the photograph necessarily showed consent and denied its admission. We find no error in the trial court's ruling.

■ The purpose of our rape-shield statute, section 16-42-101, is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *State v. Babbs*, 334 Ark. 105, 971 S.W.2d 774 (1998); *Graydon v. State*, 329 Ark. 596, 953 S.W.2d 45 (1997). The rape-shield statute prohibits admission of evidence of a victim's prior sexual conduct, unless such evidence directly pertains to the act upon which the prosecution is based. *Sterling v. State*, 267 Ark. 208, 590 S.W.2d 254 (1979). Prior acts of sexual conduct are not within themselves evidence of consent in a subsequent sexual act; there must be some additional evidence connecting such prior acts to the alleged consent in the present case before the prior acts become relevant. *Id. See also Babbs*, 334 Ark. 105, 971 S.W.2d 774; *State v. Sheard*, 315 Ark. 710, 870 S.W.2d 212 (1994). However, even such relevant evidence is not admissible unless the trial court, at an *in camera* hearing, makes a written determination that the probative value of the evidence outweighs its inflammatory or prejudicial nature. *Graydon*, 329 Ark. 596, 953 S.W.2d 45; *Bradley v. State*, 327 Ark. 6, 937 S.W.2d 628 (1997). The trial court is vested with a great deal of discretion in ruling whether the victim's prior sexual conduct is relevant, and we will not overturn the trial court's decision unless it constituted clear error or a manifest abuse of discretion. *See Babbs*, 334 Ark. 105, 971 S.W.2d 774; *Graydon*, 329 Ark. 596, 953 S.W.2d 45.

■ Here, the trial court found the evidence to be relevant to the issue of consent. The trial court reasoned that acts of deviate sexual activity might be foreign to many people, such that the jurors may be inclined to think that such conduct is never consensual. Thus, the trial court allowed defense counsel to ask the victim whether she had engaged in anal and oral intercourse with her husband and whether she had posed for photographs depicting such conduct. ·The trial court denied admission of the photographs themselves because they did not demonstrate necessarily consensual acts. The trial court also found that the photographs were more inflammatory, derogatory, and prejudicial than they

were probative. We cannot say that the trial court abused its discretion in ruling as it did.

*IV.   Admission of Taped Telephone Conversation*

For his final point on appeal, Jones argues that the trial court erred in denying his motion to suppress statements he made during a taped telephone conversation with the victim and those he made to police after his arrest. He asserts that the telephone conversation should have been suppressed pursuant to the Supreme Court's holding in *Massiah v. United States*, 377 U.S. 201 (1964), and that the custodial statement should have been suppressed because it was the fruit of an illegal arrest. We find no error.

The record reflects that the victim reported the rape to Captain William Hollenbeck, of the Sebastian County Sheriff's Office, on the date that it happened. The following day, the victim went to the sheriff's office to give an interview. While there, Hollenbeck asked her to make a telephone call to Jones to see if he would corroborate her statement. The victim agreed to make the call from Hollenbeck's office. The entire conversation was tape recorded by Hollenbeck, but Jones was not aware of this. During the course of the conversation, the victim pressed Jones to tell her why he raped her the night before. She also tried to get him to admit that it was in fact rape. Jones denied raping her for most of the conversation, although he told her that he was sorry for what he did and that it was wrong. Finally, near the end of the conversation, Jones made the statement "I did it."

Following the telephone call, Hollenbeck went to Jones's trailer to arrest him for rape. Hollenbeck did not have an arrest warrant. He testified during the suppression hearing that he believed that he had probable cause to arrest Jones based on the victim's statement and the admissions made by Jones during the telephone conversation. When he arrived at the residence, Hollenbeck informed Jones that he wanted to talk to him about the charges made by his wife. Jones agreed to go to the sheriff's office for an interview. Hollenbeck then placed Jones in handcuffs and put him in the back of a patrol car, where he was transported to the sheriff's office. Hollenbeck stated that at that point, Jones was

not free to go and was in fact under arrest. Once they arrived at the sheriff's office, Jones was taken to an interview room, and Hollenbeck read him his *Miranda* rights from a statement-of-rights form. Jones acknowledged his rights and agreed to talk to Hollenbeck without an attorney present. Thereafter, Jones confessed to the crime on tape.

During the hearing below, Jones asked the trial court to suppress his custodial confession on the ground that it was obtained illegally following an arrest without a warrant. Jones argued that the police lacked reasonable or probable cause to arrest him for rape and that, accordingly, the police violated his rights by coming into his house to arrest him without a warrant or exigent circumstances. Jones argued that his custodial statement should be suppressed as fruit of the poisonous tree. However, Jones did not directly challenge the voluntariness of the custodial statement.[1]

The trial court denied Jones's motion to suppress, finding that the police had probable cause to arrest him without a warrant pursuant to Ark. R. Crim. P. 4.1. The trial court found further that the custodial confession was given voluntarily, after Jones had been fully advised of his *Miranda* rights. In reviewing a trial court's denial of a motion to suppress, we make an independent examination of the issue based on the totality of the circumstances, viewing the evidence in the light most favorable to the State. *Holmes v. State*, 347 Ark 530, 65 S.W.3d 860 (2002); *Stanton*, 344 Ark. 589, 42 S.W.3d 474. We will reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Id.*

Jones first argues that the trial court erred in denying suppression of the telephone conversation because it was obtained illegally in violation of *Massiah*, 377 U.S. 201. He contends further that, depending on the origin of the call and location of the parties at the time, the call may have been a violation of the Federal Communications Act. Neither of these arguments were made

---

[1] In his written motion to suppress, Jones alleged that the police had coerced his statement by feeding him candy that "had a peculiar taste to it." He claimed that five minutes later, he lost all memory of the events that followed, until he woke up in the jail's suicide cell. He did not pursue this argument at the suppression hearing, nor does he pursue it on appeal. Accordingly, we need not address it.

below. The record demonstrates that the written motion to suppress only challenged the admissibility of the custodial confession. Moreover, during the suppression hearing, defense counsel did not challenge the telephone conversation, under *Massiah* or any other basis. Counsel's only argument was that Jones had been arrested illegally and that his custodial statement was therefore fruit of the poisonous tree. Accordingly, we limit our review to the issue of the legality of Jones's arrest.

A police officer may arrest a person without warrant if the officer has reasonable cause to believe that the person committed a felony. *See* Rule 4.1(a)(i); *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001); *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997). Reasonable or probable cause exists where there is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that a crime has been committed by the person suspected. *Id.* In assessing the existence of reasonable or probable cause, our review is liberal and is guided by the rule that probable cause to arrest without a warrant does not require the degree of proof sufficient to sustain a conviction. *Baxter v. State*, 324 Ark. 440, 922 S.W.2d 682 (1996). All presumptions are favorable to the trial court's ruling on the legality of the arrest, and the burden of demonstrating error rests on the appellant. *Id. See also Criddle v. State*, 338 Ark. 744, 1 S.W.3d 436 (1999).

Here, the trial court found that the police had reasonable or probable cause to arrest Jones for rape based on the victim's testimony that he had forcibly raped her using a dangerous weapon. The trial court found further support for Jones's arrest from the telephone conversation in which he made some admissions about the incident. Jones has failed to overcome the presumption in favor of the trial court's ruling that the arrest was legal. Because the arrest was legal, his custodial statement afterwards was not the fruit of the poisonous tree. Where the tree is not poisonous, neither is the fruit. *Criddle*, 338 Ark. 744, 1 S.W.3d 436. Accordingly, we must affirm the trial court's denial of the motion to suppress.

Affirmed.

IMBER, J., not participating.