Billy Earl RAINWATER *v.* STATE of Arkansas

CR 89-238                                    791 S.W.2d 688

Supreme Court of Arkansas
Opinion delivered June 18, 1990

*Gibbons & Walker*, by: *David L. Gibbons*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant was convicted by a jury of possession of cocaine with intent to deliver, possession of marijuana with intent to deliver, possession of LSD, possession of diazepam and possession of drug paraphernalia. He was sentenced to a total of forty years in the penitentiary. On appeal, he claims police officers used invalid search warrants to seize drugs found in this car and home and the evidence obtained as a result of such searches should have been suppressed by the trial court. We hold the court's ruling finding the warrants valid was correct, and therefore affirm.

Appellant first challenges the validity of the car search and relies heavily on A.R.Cr.P. Rule 13.1(b). He argues that the affidavit used to obtain the search warrant was hearsay and based almost entirely on information gained from unnamed confidential informants. He further contends that the affidavit fails to meet the requirements of Rule 13.1(b) because it lacks particular facts

concerning the informants' reliability and also fails to disclose, as far as practicable, the means by which information was obtained.

■ Appellant's argument, as posed, is wrong in two important respects. First, much of the information contained in the affidavit for the car search warrant (and the house search warrant as well) resulted from the affiant's, Officer Kyn Wilson's, personal investigation and his surveillance of the appellant's house which took place before appellant's arrest and the search of his car and home. Second, in citing Rule 13.1(b), appellant limits his reliance on language contained in the Rule which codifies the two-prong test of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), for determining whether an informant's tip establishes probable cause for issuance of a warrant. That test, of course, has been abandoned by the Supreme Court in favor of a new, more flexible one called the "totality of the circumstances test." *Illinois* v. *Gates*, 462 U.S. 213 (1983).[1] In further explaining how the totality-of-the-circumstances analysis is to be applied, the Supreme Court stated the following:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

With the *Gates* test in mind, we examine the car search warrant

---

[1] By Per Curiam February 5, 1990, effective March 1, 1990, we amended Rule 13.1(b) so it would reflect language consistent with the *Gates* decision. *See In Re Committee on Rules of Pleading, Practice and Procedure*, 301 Ark. appendix (1990). In that respect, we deleted none of the existing language in the rule but added the following:

> An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place. Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

and its supporting affidavit to determine whether sufficient information was presented to the magistrate to allow that official to determine probable cause.

We review the facts contained in the affidavit in the chronological sequence of the officer's investigation leading to the appellant's arrest. Officer Wilson averred that he personally had observed appellant's home and that, during his and his police department's surveillance, Wilson saw an extremely high volume of traffic go in and out of the home at all hours of the day and night. Individuals would come and go, and in doing so, spent short periods of time in the house. Wilson knew that some of these individuals drove vehicles that were registered to persons who had been arrested and convicted for possession or use of controlled substances. Wilson further averred that he personally knew appellant's sole job was owner/operator of a coin laundry business in Clarksville, Arkansas, and the high volume of people going to appellant's house was inconsistent with any legitimate business needs. Wilson also related that he had prior reports from individuals who said that they had purchased illegal drugs from the appellant, but none of those individuals were willing to assist the police because they feared for their personal safety.

Wilson also described the appellant as a white male with brown hair and in his forties. This description later matched with confidential informant information which led to appellant's arrest on October 14, 1988. That informant said that a white male with brown hair, who was in his forties, had been seen in Dallas, Texas, placing two garment bags containing marijuana and/or cocaine in the trunk of a 1984 silver Mercury Marquis, Arkansas vehicle license number OEY 115.[2] Wilson confirmed that vehicle was registered to appellant, and this information also corroborated other prior informant information that appellant's source of controlled substances was in Dallas, where appellant drove to procure them. Finally, the affiant, Wilson, recited that he had received information from a confidential informant that, at approximately 12:00 a.m. on the night of October 13, 1988, the

---

[2] We note that, at the suppression hearing, appellant raised a question as to whether the affidavit contained the car's description as given by the informant, but in reading the entire affidavit, we agree with the trial court that it did.

vehicle to be searched (appellant's) left Dallas, Texas in route to Clarksville, Arkansas. He concluded that this informant was a concerned citizen who had received nothing for reporting this information; he further stated that the informant had no criminal record.

▪ As can be discerned from the above, Officer Wilson did not act solely upon the advice or information given him by confidential information. Instead, his independent police work corroborated or confirmed many of the tips given by informants. Certainly the affidavit offered the magistrate sufficient verified information to show there was a fair probability that appellant's car contained controlled substances at the time the warrants were issued. Although it might not meet the "reliability" or "veracity" test established in *Aguilar*, we believe Wilson's affidavit suffices for the practical, common sense judgment called for in making a probable cause determination under the standard in *Gates*.

Before leaving the car search issue, we note appellant's allegation that Officer Wilson's affidavit misled the magistrate into believing that Wilson, not the state police, had obtained information directly from the informant, who gave the details of appellant's presence and illegal activities in Dallas on October 13, 1988. He asserts that such a misrepresentation contaminated any seizures resulting from the warrant issued by the magistrate.

▪ Again, we disagree with the appellant's analysis and interpretation of the affidavit in issue. It is true that, at the suppression hearing, Wilson stated that he had not previously dealt with the informant and the informant information he obtained was from the state police. However, all Wilson related in his affidavit was that he had "received information from a confidential informant" concerning appellant's activities in Dallas. While this statement, in retrospect, could have been worded better, it does not undermine the credibility of the information given in light of other facts Wilson related in his affidavit. Further, Wilson's statement does not negate the implication that the informant's tip could have been given him by a third party, such as the state police.

▪ Appellant also attacked the validity of the affidavit used to obtain the search warrant for his house, and while it was essentially identical to the one used for the car search warrant, it

further recited having searched and found cocaine in the appellant's car.[3] Wilson's initial surveillance of appellant's house and other information given him directly by informants may not have been sufficient to establish reasonable cause. However, as the investigation of the appellant continued, earlier information implicating appellant as one who trafficked in drugs was confirmed. Of course, no doubt existed after officers found cocaine and diazepam tablets in appellant's car. By the time Wilson requested a warrant to search appellant's house, his earlier tips and information had been corroborated at least to the extent that there was probable cause to believe that controlled substances were located in appellant's home.

Both parties, citing *United States* v. *Leon*, 468 U.S. 897 (1984), argue their opposing views concerning the "good faith" exception to defects in search warrants. While the searches involved here could also be upheld under the *Leon* rationale, we need not discuss this point because we hold the search warrants were valid and the evidence seized as a result of the searches was admissible.[4]

For the reasons stated above, we affirm.

---

[3] Appellant tried to discredit the information given by the informant, who apparently saw appellant in Dallas, by pointing out that, when appellant was stopped and arrested in Clarksville, no marijuana or cocaine was found in garment bags in the trunk of appellant's car. Even so, officers found cocaine in a bag inside appellant's car and while no drugs were found in his car's trunk, they did discover two garment bags in it.

[4] Officers found 695 grams of marijuana, four microdots of LSD, three sets of scales and other items as a result of their search.