John DAVIDSON *v.* STATE of Arkansas

CA CR 01-713                                          68 S.W.3d 331

Court of Appeals of Arkansas
Division I
Opinion delivered February 27, 2002

*Keil & Goodson*, by: *John C. Goodson*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

J OHN B. ROBBINS, Judge. Appellant John William Davidson appeals his convictions for possession of cocaine, possession of methamphetamine, possession of marijuana with intent to deliver, possession of drug paraphernalia, and possession of prohibited weapons. He was sentenced to four ten-year and one one-year prison terms, respectively, which the trial judge ordered to run consecutively for a forty-one-year prison sentence. He appeals arguing that the trial court erred in (1) denying his motion to suppress, and (2) abusing its discretion or failing to exercise its discretion in ordering the sentences to be served consecutively. We disagree with his arguments and affirm his convictions.

The following events led to the request for a search warrant to search appellant's home. On the morning of July 7, 2000, a Hempstead County sheriff's investigator participated in a helicopter patrol over Hempstead County including the rural sections of the county. Near the Hempstead and Nevada County line, the investigator observed several containers of what appeared to be marijuana plants on the bed of a trailer parked behind a barn, which was approximately 100 feet from appellant's house. There appeared to be a water hose running from the house to the trailer holding the plant containers. The investigator contacted the Nevada County Sheriff at approximately 9:15 a.m., telling the sheriff what was observed. The sheriff and three deputies drove to appellant's house, walked to

the trailer, and observed nineteen plants that they believed to be marijuana growing in five containers. The sheriff then walked to the residence and knocked on the doors, but he received no response. After about ten minutes elapsed, appellant awoke, came out of the house, and was read his *Miranda* rights by the sheriff. When asked whose trailer it was, appellant replied that it was his. Appellant denied knowing what was on the trailer, and when he was shown the plants, he began to curse and disclaimed ownership of them. The sheriff asked for consent to search the house, but it was denied. Appellant reportedly said, "If I let y'all in the house, I'm not going to be sitting well." A deputy was dispatched to obtain a warrant.

The sheriff's deputy prepared an affidavit to support his request for a search warrant to search appellant's residence. The items supposedly concealed there were contained in a list predrafted in the sheriff's computer for use in drug cases. The three-paragraph list of items expected to be in appellant's residence were:

1. Narcotics and/or compounds or derivatives thereof;

2. Scales, books, papers, records or narcotics notations, plastic baggies and any items which would be used to ingest narcotics and/or dangerous drugs into the human body.

3. Personal property tending to show residence on the premises and not limited to keys, safes, canceled mail, envelopes, rental agreements, receipts, bills for telephone and utility services, photographs, ledgers, phone lists, records of ownership to vehicles and personal property including clothing and/or jewelry, and any and all U.S. currency related to narcotics, any and all keys belonging to safe deposit boxes, bank books, bank records, ledgers (as it has been my training and experience that subjects dealing in profits keep ledgers), personal property affects such as non-cash items used to pay for narcotics, such as radios, scanners, jewelry, televisions, firearms, etc.

The deputy testified at the suppression hearing that these items were listed in the computer based upon training and experience as to what officers could reasonably expect to find during drug-related searches; the sheriff's office considered this "standard language" used in all drug cases. The facts listed in support of the application for a search warrant were the overhead sighting of marijuana plants, the subsequent location on the ground of the five containers of such plants, the encounter with appellant at his door and his admission of

ownership of the trailer but not the plants, the request for consent to search appellant's premises, and the denial of that request.[1] The warrant was granted to the deputy, and it was executed that day, locating the items that led to the additional charges and eventual convictions. Among the items found were guns and ammunition, cocaine, methamphetamine, marijuana, paraphernalia, and large sums of cash. A motion to suppress was heard and denied.

When this court reviews a trial court's ruling on a motion to suppress, we review the evidence and make an independent determination based upon the totality of the circumstances. *Gilbert v. State*, 341 Ark. 601, 19 S.W.3d 595 (2000); *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999). We will reverse a trial court's ruling on a motion to suppress only if the ruling was clearly errone-ous. *Id.*

Appellant attacks this warrant on the basis that the affidavit did not establish reasonable cause to believe that the items listed in the affidavit would be found inside the house. Appellant cites to Arkan-sas Rule of Criminal Procedure 13.1(b) (2000), which provides:

> The application for a search warrant shall describe with particular-ity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall dis-close, as far as practicable, the means by which the information was obtained. An affidavit or testimony is sufficient if it describes cir-cumstances establishing reasonable cause to believe that things sub-ject to seizure will be found in a particular place. Failure of the affidavit or testimony to establish the veracity and bases of knowl-edge of persons providing information to the affiant shall not

---

[1] We deem it important to point out that appellant's assertion of his constitutional right to deny consent to search his residence does not supply probable cause to search. *See, e.g., Florida v. Bostick*, 501 U.S. 429 (1991) (holding that a suspect's mere assertion of constitutional rights cannot constitute the sole basis for establishing probable cause to conduct a search); *United States v. Hyppolite*, 65 F.3d 1151 (4th Cir. 1995) (holding that the mere assertion of the constitutional right to refuse consent to search does not supply probable cause to search); *Snow v. State*, 84 Md. App. 243, 578 A.2d 816 (1990) (holding that the driver's refusal to consent to search of his automobile did not give rise to reasonable suspicion that the vehicle contained narcotics).

require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

■■ The test for adequacy of the affidavit set out in *Illinois v. Gates*, 462 U.S. 213 (1983), and adopted by our supreme court in *Thompson v. State*, 280 Ark. 265, 658 S.W.2d 350 (1983), was recently quoted in *State v. Rufus*, 338 Ark. 305, 993 S.W.2d 490 (1999), whereby:

> [t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying the hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *State v. Mosley*, 313 Ark. 616, 856 S.W.2d 623 (1993); *Rainwater v. State*, 302 Ark. 492, 791 S.W.2d 688 (1990).

*State v. Rufus*, 338 Ark. at 312. Although the existence of a fact may be proved by circumstances as well as by direct evidence, the circumstantial evidence must be sufficient to lead to the inference. *Yancey v. State*, 345 Ark. 103, 44 S.W.3d 315 (2001). Where circumstantial evidence is relied upon to establish a fact, the circumstances proven must lead to the conclusion with reasonable certainty and must be of such probative force as to create the basis for a legal inference and not mere suspicion. *Id.*

■■ Appellant argues that the search warrant should not have been issued because it could not be inferred from the affidavit that the items listed in the warrant could be found in appellant's home. Thus, he argues that this warrant was based upon speculation and conclusory language, not facts. Appellant recognizes that computer-generated language is not fatal *per se* when that language is coupled with additional facts to support a reasonable belief that contraband will be found. *See, e.g., Coleman v. State*, 308 Ark. 631, 826 S.W.2d 273 (1992). However, he notes that the success of the search will not validate the search if it was unlawful in its inception. *Willett v. State*, 298 Ark. 588, 769 S.W.2d (1989); *Walton v. State*, 245 Ark. 84, 431 S.W.2d 462 (1968).

██ █ The State, while not agreeing that the warrant was deficient, asserts that the "good–faith exception" enunciated in *United States v. Leon*, 468 U.S. 897 (1984), would support denial of the motion to suppress. Therefore, it posits that if the officers relied in good faith on the issuance of the search warrant by the magistrate based upon the magistrate's flawed determination of probable cause, then the fruits of the search are not subject to suppression. In answering whether the officer is acting in good faith, the analysis requires an objective standard, which requires the officers to have a reasonable knowledge of the Arkansas Rules of Criminal Procedure. *Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993). We agree with the State that the good–faith exception would support the denial of suppression in this instance. Thus, we need not address the existence of probable cause to issue the warrant.

The State points us to the holding in *Yancey, supra*, as support for that proposition. In that case, our supreme court refused to suppress evidence seized in searches of the homes of two suspects, which were located approximately five miles away from where the suspects were observed watering some marijuana plants, based upon the officers' good–faith reliance on a warrant, although the warrant was invalid because it had been issued without probable cause.

██ Appellant counters that this affidavit was so lacking in probable cause as to render official belief that probable cause resides in it entirely unreasonable, and thus the exclusionary rule should still apply. Appellant notes that there are four errors, noted in *Leon*, which an officer's objective good faith cannot cure. These errors occur (1) when the magistrate is misled by information the affiant knew was false; (2) if the magistrate wholly abandons his detached and neutral judicial role; (3) when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 914-15. Appellant argues that "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued," and that these are such circumstances. *Leon*, 468 U.S. at 922; *see also Bennett v. State*, 345 Ark. 48, 44 S.W.3d 310 (2001). We disagree with appellant.

The knowledge of the police here was that there were growing marijuana plants in plain view on a trailer bed approximately 100 feet from the residence on appellant's property. Appellant was at home in his residence and claimed ownership of the trailer. Though the sheriff believed he already had probable cause to search, the law

enforcement officers waited until they had procured a warrant before searching the premises.

The purpose of the exclusionary rule is to deter police misconduct. *Landrum v. State*, 326 Ark. 994, 936 S.W.2d 505 (1996). Because the goal of the exclusionary rule is to deter future police misconduct, it only makes sense to apply the rule where its application has a deterrent effect, and where the officers acted in objective good faith or where the transgressions are minor, the magnitude of the benefit conferred upon guilty defendants offends the basic concepts of the justice system. *Leon, supra; Yancey, supra*. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically correct. *Leon, supra*. Thus, once the warrant issues, there is literally nothing more the officer can do in seeking to comply with the law. *Leon, supra. See also Starr v. State*, 297 Ark. 26, 759 S.W.2d 535 (1988). We affirm the trial court's denial of the motion to suppress.

In his second point on appeal, appellant argues that the trial court did not exercise its discretion or abused its discretion when it sentenced him to consecutive prison terms, contrary to the jury's recommendation that the sentences run concurrently and with rehabilitation. We disagree with his contention. Arkansas Code Annotated § 5-4-403 (Repl. 1997) states in part that "when multiple sentences of imprisonment are imposed on a defendant convicted of more than one offense . . . the sentences shall run concurrently unless the court orders the sentences to run consecutively." Appellant concedes that it is solely within the trial court's discretion whether to sentence a defendant to serve concurrent or consecutive sentences, but argues that the trial court did not exercise its discretion or, alternatively, abused its discretion in mandating that his sentences run consecutively for forty-one years.

The sentencing hearing included testimony from appellant, his family, and friends, who all stated that appellant was a good person who had a drug addiction. That addiction had cost him his last marriage and a great deal of money. Appellant desired rehabilitation to assist in freeing himself of the addiction. The jury deliberated on his sentences, writing on the forms that appellant be sentenced to ten years on each of the drug charges "concurrent with rehabilitation." On the possession-of-a-prohibited-weapon conviction, the jury wrote "suspended sentence." The trial judge read these forms, stated that they were not in compliance with the law, and sent the jury back to deliberate further. The jury returned the forms with

the same notations, with the exception of the verdict form on the possession-of-a-prohibited-weapon charge, upon which the jury noted a one-year sentence but added the word "(concurrent)." The jury also recommended in writing that appellant be eligible for transfer.

The trial judge stated that he would ignore the notations. The trial judge pronounced judgment of four ten-year sentences and one one-year sentence, to run consecutively. A posttrial motion to reconsider sentencing was filed to which appellant attached a document with ten of the twelve jurors' signatures on it recommending that the sentences run concurrently. The motion went unanswered and was deemed denied.

■■ The appellant, by challenging this determination, assumes the heavy burden of showing that the trial judge failed to give due consideration in the exercise of his discretion. *Smallwood v. State*, 326 Ark. 813, 935 S.W.2d 530 (1996). There is nothing in the record to demonstrate that the trial judge did not exercise his discretion. Indeed, he obviously exercised discretion when he departed from the jury's recommendation. It is when the trial judge has a standard manner of sentencing or merely implements whatever the jury wants that the appellate court steps in and remands for resentencing. *See, e.g., Acklin v. State*, 270 Ark. 879, 606 S.W.2d 594 (1980); *Wing v. State*, 14 Ark. App. 190, 686 S.W.2d 452 (1985); *see also Blagg v. State*, 72 Ark. App. 32, 31 S.W.3d 872 (2000) (holding that the trial judge stated that the ultimate decision would be made by the court, thereby indicating his understanding that the jury's recommendation was purely advisory). Considering that these sentences were within the statutory maximum and minimum and the trial judge contemplated whether to "stack" them or not, it is abundantly clear that the trial judge exercised discretion when sentencing, and we cannot say that the trial court abused it in that exercise.

Affirmed.

CRABTREE and ROAF, JJ., agree.