Mark Allen ELSER *v.* STATE of Arkansas

CR 02-1297                                      114 S.W.3d 168

Supreme Court of Arkansas
Opinion delivered May 8, 2003

144

*Witt Law Firm, P.C.*, by: *Ernie W. Witt*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. Appellant Mark Elser was convicted of driving while intoxicated, first offense, after a jury trial in Crawford County Circuit Court. Elser appealed to the Arkansas Court of Appeals, arguing that the circuit court erred in denying his motion for mistrial where, during her opening statement, the prosecutor stated that Elser would testify. He also argued that the circuit court erred in refusing to allow Elser to present evidence of the results of a portable breath test (PBT). The court of appeals reversed the decision of the circuit court in *Elser v. State*, 79 Ark. App. 440, 89 S.W.3d 353 (2002). The State filed a petition for review of that decision, and we granted it, pursuant to Ark. Sup. Ct. R. 1-2(e). We affirm the circuit court and reverse the court of appeals.

*Facts*

On October 3, 2000, at approximately 3:21 a.m., Officer Cletus Hudson of the Van Buren Police Department noticed a red pickup truck parked on the side of the on-ramp to Interstate 540 in Van Buren. Hudson approached the vehicle and found the driver of the vehicle asleep in the front seat behind the steering wheel; the truck's motor was running. After Hudson knocked on the window of the vehicle several times, Elser awoke and opened the door of the vehicle. Hudson testified that he smelled a strong odor of alcohol when Elser opened the door.

Elser stepped out of the vehicle, and Hudson administered a PBT. Hudson testified that Elser "failed the test." Hudson also testified that Elser was unsteady on his feet, that Elser's eyes were bloodshot and watery, that Elser's speech was slurred, and that Elser had an odor of intoxicants about his person. Subsequently, Hudson administered field sobriety tests, including a horizontal gaze nystagmus test and "the finger to the nose test." Hudson testified, without objection, that Elser failed "all six points" of the horizontal gaze nystagmus test and that Elser "missed the tip of his nose with both

hands." Hudson also stated that he attempted to administer the "one-legged stand" test; however, he did not administer that test because Elser told him that he was too tired to do it.

After administering the field sobriety tests, Hudson placed Elser under arrest and transported him to the Crawford County Jail to perform a breathalyzer test. The BAC Datamaster measured Elser's blood-alcohol content at .10%.[1]

On November 6, 2000, Elser pleaded no contest in Van Buren Municipal Court to driving while intoxicated. Elser appealed to the Crawford County Circuit Court and, on May 15, 2001, a jury convicted Elser of driving while intoxicated, first offense. Elser was sentenced to a term of twenty-four hours in the county jail, a fine of $150.00, costs, and a ninety-day suspension of his driver's license.

The court of appeals reversed the circuit court in *Elser v. State*, 79 Ark. App. 440, 89 S.W.3d 353 (2002), holding that the circuit court erred in refusing to allow Elser to present evidence of the results of the PBT.[2] In so holding, the court of appeals cited this court's holding in *Patrick v. State*, 295 Ark. 473, 750 S.W.2d 391 (1988). The State filed a petition for review, which we granted.

When we grant a petition for review, we treat the appeal as if it were originally filed in this court. *Cook v. State*, 350 Ark. 398, 86 S.W.3d 916 (2002); *Nelson v. State*, 350 Ark. 311, 86 S.W.3d 909 (2002). Thus, we review the circuit court's judgment, not that of the court of appeals. *Cook, supra.*

---

[1] At the time Elser was arrested, the DWI statute provided:

(a) It is unlawful and punishable as provided in this act for any person who is intoxicated to operate or be in actual physical control of a motor vehicle.

(b) It is unlawful and punishable as provided in this act for any person to operate or be in actual physical control of a motor vehicle if at that time there was one-tenth of one percent (0.10%) or more by weight of alcohol in the person's blood as determined by a chemical test of the person's blood, urine, breath, or other bodily substance.

Ark. Code Ann. § 5-65-103 (Repl. 1997) (superseded). In 2001, the blood-alcohol content threshold was changed to .08%. *See* Acts 2001, No. 561, § 2.

[2] Elser contends that the PBT measured his blood-alcohol content at .09%.

## Prosecutor's Opening Statement

Elser's first point on appeal is that the circuit court erred in denying his motion for mistrial where, during her opening statement, the prosecutor stated that Elser would testify during the trial. Elser argues that the prosecutor's statement violated his right to remain silent and was tantamount to coercion. Near the end of the opening statement, the prosecutor stated:

> PROSECUTOR: Now Mr. Witt will present witnesses today, the defendant himself and I believe another witness . . .

After the prosecutor's statement, defense counsel moved for a mistrial. The motion was denied.

■ ■ A mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when the fundamental fairness of the trial itself has been manifestly affected. *Jenkins v. State*, 348 Ark. 686, 75 S.W.3d 180 (2002). The circuit court has wide discretion in granting or denying a motion for mistrial, and, absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. *Id.* In *Boyd v. State*, 318 Ark. 799, 804, 889 S.W.2d 20 (1994), we stated that "[t]he bottom line on mistrials is that the incident must be so prejudicial that the trial cannot, in fairness, continue."

The Fifth Amendment of the United States Constitution provides that ". . . no person . . . shall be compelled, in any criminal case to be a witness against himself, . . ." Likewise, article 2, section 8, of the Arkansas Constitution provides that a criminal defendant shall not be compelled to testify against himself or herself.

In *Clark v. State*, 256 Ark. 658, 661, 509 S.W.2d 812 (1974), the court held that a remark made by the prosecutor during opening statement violated the defendant's Fifth Amendment right not to testify. During the opening statement, the prosecutor stated:

> . . . If you notice, I'm here by myself, and this vacant chair. He might be here to tell his side but he's not here. The story then that you will have about what happened out there will come from her . . . .

*Id.* at 659.

■ ■ The trial court denied the appellant's motion for mistrial; on appeal, the appellant argued ·that the prosecutor's remark compelled her to testify when she would not otherwise have done so. *Id.* The court wrote:

> A comment on the defendant's failure to testify may not require reversal, but before such a comment can be harmless error, the court must determine that it is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18 (1967). . . .

> Therefore, in applying the rationale of the Fifth Amendment and our own state constitution and statutory provision in the instant case, we certainly cannot say with confidence that the remark of the prosecutor did not to some extent compel the defendant to testify in her own behalf. It is fair to say that the remark resulted in pre-evidentiary coercion which is just as forbidden as is post evidentiary comment. Certainly we cannot say that the effect of the comment was harmless beyond a reasonable doubt. To the contrary, it is precisely the sort of coercive activity the Fifth Amendment is designed to prevent. The guarantee or privilege against self-incrimination 'must be accorded liberal construction in favor of the right it was intended to secure.' *Hoffman v. United States*, 341 U.S. 479 (1951). The right to testify or remain silent is an absolute and 'unfettered' right for a defendant only to exercise. Unless justified, the state should not comment in any manner upon that basic right in the opening as well as closing statement.

*Id.* at 660–61.

Elser argues:

> Here, as in the Clark case, Mark Elser was coerced into testifying against himself by the Prosecutor's statement that he would testify. The prosecutor had no indication as to whether or not the defendant would testify in the present case.

However, as the State points out, the prosecutor did have an indication as to whether or not Elser would testify in the present case. The following colloquy took place during *voir dire* between defense counsel and a potential juror:

> DEFENSE COUNSEL: This man's gonna testify, this officer sitting here next to me about what happened in this case, I don't anticipate there are any grandiose differences in their testimony, but *I suspect there will be some differences in his testimony and Mark's*

*testimony*, that's the framework I'm setting to you. Now since you're related to a Van Buren Police Department officer my question to you is specific, *do you believe that you can judge his credibility and Mark's credibility on an even level*, or would you be inclined as most people are, and there's nothing wrong with it, to believe the uniformed officer, if the uniform's testimony is disputed by the person that's not in uniform?

JUROR:    I believe I could be fair.

(emphasis added).

▮ Defense counsel's questions during *voir dire* indicate that, prior to the beginning of the trial, Elser had decided to testify. The State was justified in commenting on Elser's anticipated testimony, given that during *voir dire*, defense counsel specifically made reference to Elser's testimony. We hold that the prosecutor's reference to Elser's testimony during the opening statement was harmless error beyond a reasonable doubt.

▮ Elser also argues that, even if the prosecutor's statement did not violate his right not to testify, the statement was outside the scope of opening statements. Elser failed to make this argument before the circuit court. We have repeatedly stated that we will not address arguments raised for the first time on appeal. *Rodgers v. State*, 348 Ark. 106, 71 S.W.3d 579 (2002). The circuit court did not abuse its discretion in denying Elser's motion for mistrial.

### Results of the PBT

Elser states: "The trial court erred in refusing to allow Mr. Elser to present exculpatory evidence of his innocence, namely the results of the portable breath test, which indicated that Mr. Elser was not intoxicated within the meaning of the law." At trial, after Officer Hudson testified that Elser failed the PBT, defense counsel attempted to elicit testimony from Elser concerning his PBT results. During the direct examination of Elser, the following colloquy took place:

DEFENSE COUNSEL:    . . . Now did you see what the result of the PBT was?

| | |
|---|---|
| ELSER: | . . . Yes. |
| DEFENSE COUNSEL: | Now I got the report out to check and see what the results of the PBT was, did I not? |
| PROSECUTOR: | . . . objection, Your Honor. |
| DEFENSE COUNSEL: | This is not offered for the truth but for the . . . |
| PROSECUTOR: | . . . I'll drop the objection. |
| DEFENSE COUNSEL: | . . . I got the report out for you to examine, did I not? |
| ELSER: | Yes. |
| DEFENSE COUNSEL: | And because you saw the results of the PBT, you told me, did you not? |
| ELSER: | Yes. |
| DEFENSE COUNSEL: | And what were the results of the PBT, that's that little machine that you blew into? |
| PROSECUTOR: | Objection . . . . |

At that time, the prosecutor and defense counsel approached the bench for a sidebar conference out of the hearing of the jury, where the following colloquy took place:

| | |
|---|---|
| PROSECUTOR: | I'm just wondering why the prosecution can't give the results of the PBT, if the defendant can give the results? |
| DEFENSE COUNSEL: | Because the Supreme Court of Arkansas said the defendant can. |

The circuit court asked defense counsel to provide a case citation to support his proposition. Defense counsel stated that he did not have the case with him and told the court that he needed to make a phone call to obtain the case cite. However, defense counsel was unable to obtain the cite, so the circuit court sustained the State's objection.

Thereafter, defense counsel continued direct examination of Elser:

| | |
|---|---|
| DEFENSE COUNSEL: | All right, young man, did you see the results of the . . . PBT, did you not, yes or no? |
| ELSER: | Yes. |
| DEFENSE COUNSEL: | All right, and your testimony here today would be different than the officer's testimony regarding the results of the PBT . . . |
| PROSECUTOR: | . . . objection, Your Honor. |
| THE COURT: | Sustained. The officer gave no results, let's move along. |
| DEFENSE COUNSEL: | The officer testified that you failed that test, right, the PBT? |
| ELSER: | Yes. |
| DEFENSE COUNSEL: | You'd disagree with that, would you not? |
| ELSER: | I would, yes. |

\* \* \* \*

Elser attempted to present evidence of the PBT result by stating that result was not "offered for the truth but for the . . . ." It appears that Elser was attempting to offer the evidence to question the credibility of Officer Hudson's testimony that Elser "failed the test."[3] Subsequently, Elser abandoned this line of questioning and, instead, argued that this court's case law indicates that a "defendant can put in evidence the result of the PBT." We recognize that Elser was attempting to cite *Patrick, supra,* to the circuit court.

On appeal, Elser argues that our holding in *Patrick, supra,* stands for the proposition that a defendant "may use the results of a Portable Breath Test to prove the defendant's innocence if the defense can show the test was reliable."

In *Patrick, supra,* the court stated:

---

[3] On appeal, Elser's sole argument concerning the PBT result is that the PBT result should have been admitted because it was reliable. The issue of whether Elser should have been allowed to present evidence to question the credibility of the officer's testimony that Elser "failed the test" is not before the court.

The legal question in this case is whether the results of a portable breath test, or what is sometimes called a roadside sobriety test, which are not admissible to prove a person is guilty of driving while intoxicated, are admissible when they would indicate a person is not guilty. In this case the answer is yes because the evidence is exculpatory, was crucial to the defense, and sufficiently reliable to warrant admission.

295 Ark. at 474. Further, the court stated that the appellant's DWI conviction must be reversed "because Patrick was denied the right to use evidence that he was not guilty." *Id.* at 476.

The *Patrick* court, noting that the PBT was not certified by the Arkansas State Board of Health, stated that "the results of such tests are not admissible in Arkansas." *Id.* at 479. However, in light of *Chambers v. Mississippi*, 410 U.S. 284 (1973), the court held that the PBT results should be admitted if the results are reliable. *Id.* The court wrote:

When we examine the evidence excluded in this case, in the light of *Chambers*, we see immediately that the results of the PBT were critical to the defense. The officers testified they smelled alcohol, but Patrick denied he was drinking. No liquor was found in his vehicle. He was not given a breathalizer test nor offered a chance for a blood test. While he may not have requested a phone call until later that night, the fact remains he was in jail incommunicado until the next morning. So the results of the test, which were negative, and would have shown he was not drinking, were critical to his defense and a fair trial.

*Id.* at 478-79.

In *Patrick*, the trial court heard testimony from Dr. Roger Hawk, an assistant professor at the University of Arkansas at Little Rock, and an expert on breathalyzers in criminal cases. *Id.* at 479. This court noted that Dr. Hawk "testified that the instrument is generally accepted as reliable in detecting the presence or absence of alcohol, although not the exact quantity." *Id.* In addition, Dr. Hawk stated that an independent study had been performed regarding the reliability of the Alco-Analizer II, the model of the PBT that was administered to Patrick, and that the study "showed that the chances of a negative reading being wrong were 1 in 10,000." *Id.* This court stated:

We are convinced that the evidence is not so inherently unreliable that a jury cannot rationally evaluate it. This, together with

the fact that the test results were necessary for Patrick to receive a fair trial, leads us to conclude that the trial court should have admitted the test results into evidence; it should have allowed the officers to be cross-examined about the test results; and the relevant admissible testimony of Dr. Hawk should have been admitted.

*Id.* (Citations omitted.)

In *Patrick,* the court did not hold that the PBT was reliable to test a person's blood-alcohol content. Rather, the *Patrick* court held that Patrick's defense was that he had not drunk any alcohol, and the PBT was reliable, based on the proffer before the trial court from the expert witness, to prove whether Patrick had drunk any alcohol. In *Patrick,* the PBT result was exculpatory for the purpose of proving that Patrick had not drunk any alcohol.

In the present case, Elser maintains that the results of a PBT are admissible if they are consistent with the BAC Datamaster results. Elser states:

> In the present case, Officer Hudson testified that the BAC Datamaster Machine was accurate plus or minus .01%. According to Officer Hudson's testimony, the results of the BAC Datamaster test taken by Mark Elser could have been .11%, .10%, or .09%. Therefore, the results of the PBT test were admissible if they were consistent with the findings of the BAC Datamaster Machine. Furthermore, if the PBT test results were consistent with the BAC Datamaster Machine test results, then the results must be as reliable as the results of the BAC Datamaster Machine. If the PBT registered .09%, then the BAC Datamaster Machine would have been inaccurate as Officer Hudson testified to the jury it could be, and Mark Elser would not [be] intoxicated within the meaning of the law. The defense attempted to introduce this evidence that would have shown that Mark Elser was not intoxicated within the meaning of the law, but that his actual results were below the legal limit. The PBT, if consistent with the BAC Datamaster Machine, must be held to be admissible and reliable because the PBT reliability is proven by virtue of the BAC Datamaster Machine.

In effect, Elser is attempting to "bootstrap" the reliability and admissibility of the PBT upon the reliability and admissibility of the BAC Datamaster Machine. Elser offers no authority to support his argument. This court will not entertain an argu-

ment where there is no citation to authority or convincing legal argument. *Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002).

■ We hold that PBT results are not admissible as substantive proof absent proof PBT results are reliable. This holding is not inconsistent with *Patrick, supra*.

We affirm the circuit court and reverse the court of appeals.

Affirmed.