Sherman WINTERS Jr. & Deanna Winters  *v.*
STATE of Arkansas

CACR 04-2                                         201 S.W.3d 4

Court of Appeals of Arkansas
Opinion delivered January 5, 2005

*Will A. Kueter, Lohnes Tiner,* and *Brenna J. Ryan,* for appellants.

*Mike Beebe,* Att'y Gen., by: *Clayton K. Hodges,* Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. A jury in Poinsett County Circuit Court convicted appellant, Sherman Winters, Jr., of manufacturing a controlled substance, methamphetamine; possession of drug paraphernalia with intent to manufacture methamphetamine; possession of methamphetamine with intent to deliver; possession of pseudoephedrine with intent to manufacture methamphetamine; and simultaneous possession of drugs and firearms. He was sentenced to 360 months' imprisonment in the Arkansas Department of Correction. In a joint trial, appellant, Deanna Winters, was convicted of manufacturing methamphetamine; possession of methamphetamine; possession of pseudoephedrine with intent to manufacture methamphetamine; simultaneous possession of drugs and a firearm; and possession of drug paraphernalia with intent to manufacture methamphetamine. She was sentenced to twenty years' imprisonment in the Arkansas Department of Correction. Both appellants have two arguments on appeal. First, they argue that the trial court erred in denying their motion to suppress evidence that was obtained from a search of their residence. Second, they argue that the trial court erred by failing to grant a mistrial based upon the State's comment on appellants' failure to testify. We disagree and affirm appellants' convictions.

Because appellants do not challenge the sufficiency of the evidence, an entire recitation of the facts is unnecessary. The relevant facts to address the issues on appeal involve the circumstances surrounding the issuance of a search warrant and the prosecutor's closing arguments. On December 24, 2002, Officer Bryant Richardson submitted an affidavit for a search warrant of Sherman and Deanna Winters' home to Poinsett County District Judge Steve Inboden. During the submission of the affidavit, Judge Inboden specifically questioned Officer Richardson about the reliability of the confidential informant. The following dialogue took place:

> INBODEN: Was she under arrest or under investigation; did she have any outstanding warrants or did she come to you to cut a deal for something else?
>
> RICHARDSON: No, sir.
>
> INBODEN: Does she have any charges pending that you're aware of?
>
> RICHARDSON: No, sir.

INBODEN: Okay. And to your knowledge she had no motive other than to provide you with information that would result in the seizure of the contraband and, I presume, probably protection of the child as much as anything.

RICHARDSON: Yes, sir.

INBODEN: Did she give you any reason why she came forward in particular?

RICHARDSON: No, sir.

At a hearing on the motion to suppress, Officer Richardson testified that on December 24, 2002, while he was at the detention center, he saw Sonya Henry, a woman he had known for fifteen years, and Ms. Henry indicated that she wanted to speak with him. That evening, Ms. Henry had been brought into the department on a warrant for her arrest. He testified that Ms. Henry had given him information on one other occasion, and that the information had been reliable. Ms. Henry immediately began talking to Officer Richardson, and he testified that he told her to "wait until she was bonded out" to finish giving him any information. He testified that Ms. Henry ultimately told him that she had personally witnessed an active drug lab at appellants' residence. He stated that, in the meantime, he did not contact Ms. Henry's probation officer regarding the situation.

On cross examination, Officer Richardson testified that he had personal knowledge that Ms. Henry was a "multiple felon" and that she had been in and out of the penitentiary. He also testified on cross examination that he was aware that Ms. Henry was on probation; however, he stated that he did not think that Ms. Henry had a motive to lie. He admitted that he did not run a check of her record, which would have shown a felony warrant from Illinois; however, he did admit that he knew about it, he "just did not know about it at the time." Officer Richardson specifically stated on cross that "I told Judge Inboden that I was not aware of any criminal charges pending against her, and that I thought she had paid her bond. . . I knew there were charges pending against her and I told the judge something different."

Officer Gary Hefner testified at the hearing that he was called by the Trumann Police Department to pick up Ms. Henry on violation of the hot check law. He found her, pulled her over in her vehicle, and called Officer Wright to come and transport her to the detention center.

In Judge Inboden's testimony at the suppression hearing, he stated that Officer Richardson told him that this "wasn't a deal where [the informant] was being charged or arrested or was under investigation." He stated that he specifically asked Officer Richardson if the informant was under arrest and the officer responded that she was not. Judge Inboden also testified that whether or not an informant is reliable assists him in making a decision as to whether or not he will issue the warrant and that credibility of an informant is crucial. "If someone presents me with something based on a person's knowledge who isn't credible or believable, I would be much less likely to grant the warrant." He stated that he "relied on [Richardson's] testimony" as to the informant's reliability and he "acted accordingly" in issuing the warrant.

At the conclusion of the suppression hearing, appellants' motions to suppress were denied. The trial judge then proceeded with the trial. During the State's closing arguments, the following dialogue took place:

> Ms. GRAYSON: Thank you, Your Honor. Ladies and gentlemen, trust me. They brought in some pictures of the outside of that house, and showed these witnesses who were out there, the police officers.
>
> If there had been any single thing about the layout of the master bedroom that would add to the, support the defendant's contention in this case, there would have been pictures of that, they would have shown them to the officers, the officers would have said yes, that's what the bedroom looked like, and you would have then to look like.
>
> If there had been an witnesses available to testify, to support any of these —
>
> MR. DUNLAP: Objection, Your Honor, we need to approach the bench.
>
> THE COURT: Mr. Dunlap, settle down.
>
> MR. DUNLAP: May we approach, Your Honor?
>
> THE COURT: Yes.
>
> MR. DUNLAP: Your Honor, this is a Motion for a Directed Verdict. Ms. Grayson has just pointed out and argued to

the jury that the defendants haven't testified, Your Honor, they've put on no witnesses, that's a direct comment on their constitutional right to sit there and not testify. I'm moving for a mistrial, Your Honor.

THE COURT: Ms. Grayson?

MR. HUNTER: I join in that objection. I agree whole-heartedly.

MS. GRAYSON: Your Honor, I didn't even finish my sentence. I first asked them, first what I said was have there been any witnesses to support, or any photographs that would've helped them, they would've had them in.

If there'd been anything to support the issues they raised such as the safe, which I said in my first part, that they would've brought in those outside witnesses to say that. They had no intention of commenting on whether or not the defendants took the stand. I just didn't get finished.

THE COURT: I don't think that she has so commented at this point and time.

MS. GRAYSON: But I'll completely steer clear of that —

THE COURT: Motion for Mistrial is denied.

MR. HUNTER: May I add something to it briefly, Your Honor?

THE COURT: Yes.

MR. HUNTER: Your Honor, there is certainly now in the minds of the jurors something that's been said by the prosecutor in that statement where it's implied that the defendants haven't testified. Your Honor, I think there's case law at this point, and I can't cite it, but I would move for a mistrial based on that.

THE COURT: I heard your Motion earlier, and the pros-ecutor was not through with her question at the

time. She was interrupted very vocally by Mr. Dunlap standing and the Court denies the Motion for Mistrial. Proceed with your closing.

Ms. GRAYSON: And again, I submit if there was a third bedroom, we didn't see any photographs, to have the witnesses identify that third bedroom. In fact, they said they was not. (sic) Mrs. Winters, when they came through that door, was standing there with the baby, the small child in her arms. We know the child's bedroom was back beyond that door, behind that wall. And we know there's a master bedroom. There's been nothing said about a third bedroom. So their attempt to portray this as a junk room is just a red herring, they're trying to pull you off the line.

MR. DUNLAP: Another objection, Your Honor, we need to approach.

THE COURT: All right, you may.

THE COURT: All right.

MR. DUNLAP: She's done it again, Your Honor. I'm moving for a mistrial at this time. She, there's been nothing said about a third bedroom, nothing, she's, she's commenting again on the defendant's rights to sit there and not testify, and with respect I'm moving for a mistrial. That's the second time she did it.

Ms. GRAYSON: I specifically said that they could've shown pictures to the officers who were present in the house.

THE COURT: Motion denied. I don't, the Court finds she did not comment on the failure of the defendants to testify.

At the conclusion of the trial, appellant Sherman Winters was convicted of manufacturing a controlled substance, methamphetamine; possession of drug paraphernalia with intent to manufacture methamphetamine; possession of methamphetamine with intent to deliver; possession of pseudoephedrine with intent to manufacture metham-

phetamine; and simultaneous possession of drugs and firearms. Appellant Deanna Winters was convicted of manufacturing methamphetamine; possession of methamphetamine; possession of pseudoephedrine with intent to manufacture methamphetamine; simultaneous possession of drugs and a firearm; and possession of drug paraphernalia with intent to manufacture methamphetamine. This appeal followed.

## Appellants' Motion to Suppress

Appellants argue that the trial court erred in denying their motion to suppress evidence that was obtained from a search of their residence. Our standard is that we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). Under [a totality-of-the-circumstances] analysis,

> [t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud-[ing]" that probable cause existed.

*Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998) (quoting *Moore*, 323 Ark. at 538, 915 S.W.2d at 289-90) (citing *Rainwater v. State*, 302 Ark. 492, 791 S.W.2d 688 (1990)).

Appellants assert that Officer Richardson made a conclusory statement as to the confidential informant's reliability. Our supreme court has stated that the affiant must state more than a mere conclusion and disclose enough information to show that the informant is worthy of belief. *Atkins v. State*, 264 Ark. 376, 572 S.W.2d 140 (1978). In *Atkins*:

> the affiant in substance said: "I know my informant is reliable, because he has been reliable in the past." That statement is a mere conclusion, providing the magistrate with no facts bearing upon the reliability of the unnamed informant. Thus the magistrate was at

best depending upon the reliability of the affiant, not upon that of the informant. Where hearsay is an essential basis for the magistrate's conclusion, that short cut is not permissible.

*Id.* at 377, 572 S.W.2d at 141; *but cf, Heard v. State,* 316 Ark. 731, 736-37, 876 S.W.2d 231, 234 (1994) (holding that where the affidavit stated that "during this investigation, affiant [police officer] received information from a person proven to be reliable on several occasions, who has observed cocaine being possessed, used, and sold at the above described residence," the affidavit, when viewed as a whole, provided a substantial basis for cause to believe that the cocaine would be found at the house). Rule 13.1(b) of our Arkansas Rules of Criminal Procedure adopts the totality-of-the-circumstances analysis and provides in part:

> If an affidavit or testimony is based in whole or part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place.

*Langford,* 332 Ark. at 60, 962 S.W.2d at 361-62. In addition, under Rule 13.1(b), failure to establish the bases of knowledge of the confidential informant is not a fatal defect "if the affidavit viewed as a whole provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in particular places." Langford, supra. (citing *Heard v. State,* 316 Ark. 731, 736-37, 876 S.W.2d 231, 234 (1994) (quoting *Mosley v. State,* 313 Ark. 616, 622, 856 S.W.2d 623, 626 (1993)).

██ Here, Officer Richardson responded to Judge Inboden that he had personally used this informant once before. He specifically answered "yes" when asked if he had personal knowledge of other instances where the informant had provided accurate information to the Poinsett County Sheriff's Department. Officer Richardson also answered in the affirmative when asked if the informant was accurate when previously providing information to him. Unlike the court in *Atkins, supra,* we find the response given by Officer Richardson in this case to be more than a conclusory statement. *See Heard, supra,* (where the affiant merely stated that "during the investigation, affiant [Officer Stovall] received infor-

mation from a person proven to be reliable on several occasions, who has observed cocaine being possessed, used, and sold at the above described residence).

We now turn to another portion of appellants' argument where they assert that there was a *Franks* violation in this case. Specifically, appellants assert that Officer Richardson "omitted relevant facts, made false statements or, at best, recklessly disregarded the truth." *Franks v. Delaware,* 438 U.S. 154 (1978), contains the proper analysis for determining whether false material, misleading information, or omissions render an affidavit in support of a search warrant fatally defective. *See State v. Rufus,* 338 Ark. 305, 993 S.W.2d 490 (1999). In *Franks,* the Delaware Supreme Court refused to grant a suppression hearing where officers wrote the affidavit in the first person and affirmatively stated on three occasions that they had personally spoken to the witnesses, when in fact, they had not. *Id.* Upon remand from the United States Supreme Court, the Delaware Supreme Court excised the false information from the affidavit, and determined that the remaining portions were sufficient to establish probable cause such that it was not necessary to hold a suppression hearing on the issue. *Franks v. State,* 398 A.2d 783 (Del. 1979).

Our supreme court has recognized that, under *Franks,* a warrant should be invalidated if a defendant shows by a preponderance of the evidence that: (1) the affidavit contained a false statement that was made knowingly, intentionally, or recklessly by the affiant; and (2) the false statement was necessary to a finding of probable cause. *Langford, supra* (citing *Echols v. State,* 326 Ark. 917, 950, 936 S.W.2d 509, 525 (1996), *cert. denied,* 117 S. Ct. 1853 (1997) (citing *Franks,* 438 U.S. at 155-56)). The supreme court further recognized that, if such findings are made, the *Franks* test requires that the false material should be excised and the remainder of the warrant examined to determine if probable cause still exists. *Id.* If the truthful portion of the warrant makes a sufficient showing of probable cause, the warrant will not be invalidated. *Id.* Similarly, when an officer omits facts from an affidavit, the evidence will be suppressed if the defendant establishes by a preponderance of the evidence that 1) the officer omitted facts knowingly and intentionally, or with reckless disregard, and 2) the affidavit, if supplemented with the omitted information, is insufficient to establish probable cause. *Rufus, supra* (citing *United States v. Buchanan,* 167 F.3d 1207 (8th Cir. 1999); *Pyle v. State,* 314 Ark. 165, 862 S.W.2d 823 (1993)).

■ Under the facts of the case at hand, appellants met their burden of proving that Officer Richardson knowingly made a false statement to Judge Inboden. Officer Richardson admitted at the hearing that he was untruthful when he told Judge Inboden that he was not aware of any criminal charges pending against the informant at the time. He knew at the time that there were criminal charges pending against her. Moreover, Officer Richardson testified at the suppression hearing that, while he did not inform Judge Inboden, he had personal knowledge that the informant was a "multiple felon," that he knew she had a criminal history spanning most of her life, including time in the penitentiary, and that she was out on probation at that time. Because we find that appellants have met the first prong of the *Franks* test, we must now determine if after excising the false statements and supplementing with the addition of any omitted material, the warrant is still sufficient to establish probable cause.

When an affidavit for a search warrant is based, in whole, or in part, on hearsay, the affiant must set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. *Stanton v. State*, 344 Ark. 589, 42 S.W.3d 474 (2001) (citing *Owens v. State*, 325 Ark. 110, 926 S.W.2d 650 (1996) (citing Ark. R. Crim. P. 13.1(b)). Factors to be considered in making such a determination include whether the informant's statements are (1) incriminating; (2) based on personal observations of recent criminal activity; and (3) corroborated by other information. *Id.* Additionally, facts showing that the informant has provided reliable information to law enforcement in the past may be considered in determining the informant's reliability in the present case. *Id.* (citing *Langford, supra*; *Moore v. State*, 297 Ark. 296, 761 S.W.2d 894 (1988)). Failure to establish the bases of knowledge of the informant, however, is not a fatal defect if the affidavit viewed as a whole "provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place." *Id.* (citing Rule. 13.1(b); *see also Langford, supra*; *Heard, supra*).

■ After removal of Officer Richardson's false statements and after the addition of material that he omitted, the information before Judge Inboden upon which he could base a finding of probable cause would essentially consist of the following:

1. Officer Richardson's assertion that he had personally used Ms. Henry in the past when she had provided accurate information and

that he was personally aware of other instances when she had provided reliable information to the Poinsett County Sheriff's Department.

2. The fact that Ms. Henry was a multiple felon, had a lifelong criminal history, and currently was facing felony charges upon which she had been arrested that day prior to giving her statement to Officer Richardson.

3. The fact that Ms. Henry had told Officer Richardson that she had that day personally observed a methamphetamine lab in operation at the Winters' residence and had identified other people who were present.

We conclude that under the second prong of the *Franks* test, this information is still sufficient to support a finding of probable cause to issue the search warrant. The statements that Ms. Henry made to Officer Richardson were clearly incriminating. This factor actually becomes more apparent with the addition of the information that Ms. Henry had a long criminal record, had pending charges against her and was on probation. In addition, the statements made to Officer Richardson were based upon personal observations of recent criminal activity. Specifically, Ms. Henry told Officer Richardson that she had recently witnessed an active drug lab at appellants' residence and that other people besides the appellants were present. We agree with appellants that Ms. Henry's statements were not corroborated by other information, and we are appalled by Officer Richardson's blatant lies to Judge Inboden; however, under a totality-of-the-circumstances test, we find that the affidavit, as amended, when viewed as a whole provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure would be found at the Winters' residence. Therefore, we conclude the warrant in this case is sufficient to establish probable cause and the trial judge did not err in denying appellants' motion to suppress.

### Mistrial

Second, appellants argue that the trial court erred by failing to grant a mistrial based upon the State's comment regarding appellants' failure to testify. A mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when the fundamental fairness of the trial itself has been manifestly affected.

*Elser v. State,* 353 Ark. 143, 114 S.W.3d 168 (2003). The circuit court has wide discretion in granting or denying a motion for mistrial, and, absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. *Id.* The supreme court in *Boyd v. State,* 318 Ark. 799, 804, 889 S.W.2d 20, 22 (1994), explained that "[t]he bottom line on mistrials is that the incident must be so prejudicial that the trial cannot, in fairness, continue."

An allegedly improper comment on the defendant's failure to testify usually occurs during the prosecutor's closing argument, when the evidence is closed and the defendant's opportunity to testify has passed. *Adams v. State,* 263 Ark. 536, 566 S.W.2d 387 (1978). When a prosecutor is alleged to have made an improper comment on a defendant's failure to testify, the appellate court reviews the statement in a two-step process. *Jones v. State,* 340 Ark. 390, 10 S.W.3d 449 (2000). First, we determine whether the comment itself is an improper comment on the defendant's failure to testify. *Id.* The basic rule is that a prosecutor may not draw attention to the fact of, or comment on, the defendant's failure to testify, because this makes the defendant testify against himself in violation of the Fifth Amendment. *Id.* A veiled reference to the defendant's failure to testify is improper as well. *Id.* If we decide that the prosecutor's closing argument statement did refer to the defendant's decision not to testify, we would then determine whether it can be shown beyond a reasonable doubt that the error did not influence the verdict. *Id.*

■ In *Bradley v. State,* 320 Ark. 100, 105, 896 S.W.2d 425, 428 (1995), the supreme court explained,

> In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court declared that references to a defendant's failure to testify violate the Fifth Amendment privilege against self-incrimination, but can be harmless error if it is shown beyond a reasonable doubt that the error did not influence the verdict. *Id.* at 615. Practical application of the Chapman test involves excising the improper remarks and examining the remaining evidence to determine if it can be shown beyond a reasonable doubt that the error did not influence the verdict. *Logan v. State,* 299 Ark. 266, 773 S.W.2d 413 (1989).

Here, defense counsel moved for a mistrial following the prosecutor's statement that,

> They brought in some pictures of the outside of that house, and showed these witnesses who were out there, the police officers.

> If there had been any single thing about the layout of the master bedroom that would add to the, support the defendant's contention in this case, there would have been pictures of that, they would have shown them to the officers, the officers would have said yes, that's what the bedroom looked like, and you would have then to look like. If there had been any, witnesses available to testify, to support any of these —

Defense counsel argued to the trial judge that "there is certainly now in the minds of the jurors something that's been said by the prosecutor in that statement where it's implied that the defendants haven't testified." However, the prosecutor responded that she had not been given the opportunity to finish her sentence. She explained that she was pointing out to the jury the lack of evidence provided by the defense. The trial judge denied the motion. The prosecutor continued with her statements, and again, defense counsel objected stating that the prosecutor had commented a second time on the defendants' failure to testify. The prosecutor responded that she was referring to the fact that the defense could have shown pictures of the house to the officers that were present during the search. The trial judge again denied the motion stating that "the Court finds that she did not comment on the failure of the defendants to testify." Based on our review of the prosecutor's comment in her closing statement, we find that the statement itself neither drew attention to nor was a comment on the defendants' failure to testify; instead, it was a comment on the state of the evidence presented to the court by appellants. *See Jones, supra* (holding that the prosecutor's comment was not a veiled reference to appellant's failure to testify; rather, the prosecutor was referring to appellant's lack of remorse, which was evidence, completely aside from appellant's own non-appearance on the witness stand, on which the prosecutor was free to comment.) Accordingly, we find that the trial court did not abuse its discretion in denying appellants' motion for a mistrial.

Based on the foregoing, we affirm appellants' convictions.

CRABTREE, J., agrees. GRIFFEN, J., concurs.

WENDELL L. GRIFFIN, Judge, concurring.

*Liars when they speak the truth are not believed.* — Aristotle (384 B.C. – 322 B.C.)

I write to make it clear that Officer Richardson's actions are not to be condoned, despite the outcome of this case. The

statements in the affidavit, apart from the fact that the informant had been arrested and had charges pending, were sufficient to obtain the search warrant, but that in no way excuses the fact that Officer Richardson lied to a magistrate *under oath*. Whatever the testimony showed that day in court, it is clear that Officer Richardson was less than honest when talking to Judge Inboden. When the judge asked, "Was she under arrest or under investigation; did she have any outstanding warrants or did she come to you to cut a deal for something else?", Richardson said "no." When the judge asked, "Does she have any charges pending that you're aware of?", Richardson said "no." And these answers were important to Judge Inboden when making his determination whether or not to issue the search warrant, as illustrated by his remarks at the suppression hearing:

> I was trying to establish if it were a self-serving accusation made by someone already on the ropes, who didn't care if the information were credible or not, as long as it got them off the hook. I was trying to figure out if the CI's information could be trusted as reliable, or if it were just a fishing expedition. That helps me make the decision about whether I'm going to issue the warrant. I think the credibility of someone who provides information for an affidavit is crucial; the whole point of having a sworn affidavit is to be able to rely on that information. If someone presents me with something based on a person's knowledge who isn't credible or believable, I would be much less likely to grant the warrant. Witnesses' credibility is always crucial. Without the CI present, I have to rely on the affiant to the affidavit to the search warrant. In this case, it was Officer Richardson. I relied on his response on the tape being honest. I wanted to know if this person's feet were to the fire, if they were willing to say anything to get out of the mess they were in. I don't know to what extent this may have been the case. I relied on [Richardson's] testimony that this was not the case, and I acted accordingly.

Magistrates grant warrants and courts review the validity of warrants based on the totality of the circumstances. *Stanton v. State*, 344 Ark. 589, 42 S.W.3d 474 (2001). One of the key components of that totality–of–circumstances review, particularly in cases where confidential informants are involved, is the credibility of both the informant and the affiant. When the party providing the information is not completely truthful, that provides more reason for a court to suppress any evidence pursuant to a bad warrant. A history of lying, as Officer Richardson now has, does even more to

take away from the circumstances that would allow for the issuance of a search warrant. Even if Officer Richardson is honest in future dealings with judges and magistrates, his credibility and future ability to serve and protect the people of Poinsett County have suffered great damage. As Aristotle stated, even the truth is not believed when a liar declares it.